COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Rosey BURCHETT and Ollie Burchett, Husband, Appellees.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Maggie BINGHAM and Clabe Bingham, Husband, Appellees.

Court of Appeals of Kentucky.

April 26, 1963.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Edmond H. Tackett, Pikeville, for appellant.

Clifford B. Latta, Prestonsburg, for appellees.

PALMORE, Judge.

In connection with the reconstruction of a portion of U. S. Highway 23 some 3 to 4 miles north of Prestonsburg the state highway department brought these proceedings pursuant to KRS 177.081 et seq. to condemn 9.77 acres of land in fee simple. It appeals from a judgment of the Floyd Circuit Court denying it the right to condemn for the following reason:

"That the petitioner is not authorized to condemn the lands for the use and occupancy thereof and the material for the purposes and under the conditions

and limitations set forth in the petition on the grounds that the petitioner has exercised bad faith and has abused its discretion. The selection of the property to be taken was not a·practical necessity. The Court has personally viewed the land proposed to be taken and finds that the property was selected as a mere convenience and that there is other land readily available for the specified purpose of a waste area and that the public interest will not be served by appropriating valuable land for the purpose of waste when less valuable land is available to the petitioner ·at less cost and equal convenience."

■ KRS 177.081(1) specifies that "the condemnor's decision as to the necessity for taking the property will not be disturbed in the absence of fraud, bad faith, or abuse of discretion." When the highway department by official order determines that an acquisition is necessary, as it did in these cases, this statute places on the defendant the burden of proving fraud, bad faith or abuse of discretion. Cf. Weiss v. Commissioners of Sewerage, 1913, 152 Ky. 552, 153 S.W. 967. Therefore, the question before us is whether the trial court's factual determination of bad faith and abuse of discretion was supported by substantial evidence. If not, the finding was "clearly erroneous" under CR 52.01. Byerly Motors, Inc. v. Phillips Petroleum Co. (Ky.1961), 346 S.W.2d 762, 765.

At the place where it is to be reconstructed, U. S. 23 runs near Levisa Fork of the Big Sandy River, a stream noted for the devastation wrought by its sudden and frequent flooding. The space between the two is bottom land lying 10 to 12 feet below the level of the highway. The road is situated along the side of a hill, and high water has caused slippage of the supporting soil. To correct this situation the highway department proposes to move the center of the road farther into the hill, which will necessitate the cutting out and removal of about 130,000 cubic yards of dirt and rock. The land sought to be acquired in these proceedings belongs to two owners and consists of a section of the bottom land reaching from the highway to the river. Though neither the official order of the highway department nor its petition to condemn defines or limits the specific use to which this land is to be devoted, the evidence shows that the immediate purpose of the department, and the sole reason why its district engineer selected it, is to use the land for waste disposal, that is, to deposit on it the 130,000 yards of dirt and rock to be removed from the relocated right-of-way. This will result in bringing the 9.77-acre disposal area up to the level of the highway and several feet above the level of the bottom land that will be left on each side of the property taken.

■ Bottom land in hill country is, of course, scarce and valuable, and although that is one of the circumstances of this case no one would contend that it is a dispositive consideration on the question of necessity. Whatever the property is worth, if it is taken the law secures to its owners the right of just compensation. With respect to the public interest, obviously the highway department must be allowed a broad discretion. However, if it be conceded for the sake of argument that the public interest is a relevant evidentiary factor bearing on the issues of bad faith and abuse of discretion, we observe that the learned trial judge himself pointed out during the hearing that the mere filling in of the low land would not destroy either its utility or its value, commenting as follows: "Well, later on if they decide to use it, which I think ought to be done—there's no use to waste that much level land in this country. You could put 12 inches of dirt on all kinds of flat rock and you could get a good crop. If it were my land I would like mighty well to have it after the fill is made, and to put 12 or 14 inches of soil on it, level land, it could be used to good advantage in this country." So the "public interest" argument really

is not based on the unnecessary destruction of useful land, but on its transfer to public ownership. As will appear from the ensuing discussion, we do not consider this to be either against the public interest or remotely suggestive of bad faith.

The main thrust of the landowners' case is that the refusal of the highway department to accept, as a gift, a temporary easement to dispose of the waste material within a boundary different from that chosen by the department gives substance to the claim of bad faith and abuse of discretion. The proposed alternative area embraces a portion of the 9.77-acre site selected by the state that lies adjacent to the existing right-of-way, and extends into a hollow or ravine owned by a third party who joined with the appellees in the offer of a temporary easement. A qualified engineer testified in their behalf to the effect that the alternative area would serve the purpose with no material loss of convenience, but he gave no support to the allegations of bad faith and abuse of discretion. To the contrary, we quote his testimony as follows:

Under cross-examination,

"Q–80 Now you say that this proposed taking by the state is sufficient, and it would accommodate this waste, wouldn't it?

"A– Yes, sir.

"Q–81 Now, Mr. Onkst [the district engineer] testified here about choosing that spot there. Do you think he used bad judgment or bad faith?

"A– I see no bad faith. It is the easiest place in that area to get into to serve his purpose.

"Q–82 The easiest place. Then, what are you trying to do? You are just showing that another area could be—

"A– I am showing there is another area. I don't say that this is the easiest area. What I do say about this area is that it will handle the same amount of yardage, and when it is all taken in it won't be any further to handle. Now, I am not saying which is the easiest to use.

"Q–83 Actually, the way it is laid out here, it would be easier for them to come in and dump on the state?

"A– Oh, that is for sure.

"Q–84 And he didn't use any bad faith in choosing this, did he?

"A– Oh, I see where he used no bad faith.

*    *    *    *    *    *

"Q–93 Do you think, being an engineer and having worked with a corps of engineers, that Mr. Onkst made a wise choice in picking this particular spot?

"A– Oh, I would say for his purpose that he definitely picked the easiest place and the least cost to the state to put it there.

"Q–94 And what you have done is just to show that another spot could be used?

"A– Right."

And on re-direct examination,

"Q–99 Well, now, in the selection of this site by the state that Mr. Tackett asked you about, in your opinion, is that the most convenient site that they selected?

"A– I would say it is the easiest and best to get in and get out of.

"Q–100 If you were going down there to select a waste area for the department of highways and you wanted to get the easiest possible place you could get to do it, would this be the site you would pick?

"A– Yes, sir.

"Q–101 And as a matter of mere convenience, if nothing else, this is an ideal spot?

"A– It is. It's an ideal spot.

"Q–102 But the property which you propose and which is indicated in green on this map, can serve the same purpose?

"A– It can; yes, sir."

The district engineer admitted it was not absolutely necessary to choose this particular plot of land, but that he did so because he thought it was the most logical and convenient place for the purpose. In making the selection he had no other purpose in mind, and at that time did not know who owned the land. He admitted also that he had heard rumors that the property would later be used as the location of a district highway garage, and that the subject had been discussed within the department, but he did not know of any decision to that effect. It was developed through his testimony that quite often in awarding highway construction contracts the department requires or permits the contractor to assume the burden of waste disposal, and that even when that is not the case there are many instances in which temporary easements, rather than the fee title, are acquired.

■ The project in question is to be financed 50% by the state and 50% by the United States. Hence it was necessary that the disposal site, and its acquisition in fee, be approved by a federal representative. This acquisition was so approved. Whether the United States would approve the alternative plan suggested by the owners, or even the acquisition of a temporary easement, is a matter of pure speculation. There was no evidence in that respect. Certainly, however, there is manifest good reason for acquisition of the fee simple title if, as appears distinctly possible, the

value of the land will be enhanced by filling it to the level of the highway. Even with a cost-free land acquisition, the expense of moving the waste material would represent a substantial investment of funds that would be lost and beyond recoupment unless the acquisition were in fee.

■ In this whole case we do not find one iota of evidence to support the claim of bad faith or abuse of discretion. It makes no difference that the department could have chosen another location or another plan for waste disposal. Probably any highway could be routed some other way. The state cannot reasonably be compelled to submit its administrative judgments to battle in every county court house. Cf. Davidson v. Commonwealth ex rel. State Highway Commission, 1933, 249 Ky. 568, 61 S.W.2d 34, 37. And if it be conceded that when the immediate purpose of the acquisition has been completed the state will be the owner of a valuable piece of property, so what? Is long-range planning by a governmental agency charged with the expenditure of astronomical sums of money to be regarded as *against* the public interest? Is the possibility that it may contemplate getting further use out of the property evidence of bad faith? On the question of "public necessity," is the highway department to be denied the exercise of prudence and foresight? Surely the answer is self-evident.[1]

■ The judicial power of government should not be invoked against the discretion of an agency of the executive branch in determining what is in the public interest, including what particular property is needed in connection with a valid public project, unless there is such a clear and gross abuse of that discretion as to offend the guaranty of Const. § 2 against the exercise of arbitrary power.

The judgment is reversed.

Williamstown, Ky.1958, 308 S.W.2d 795; Pike County Board of Education v. Ford, Ky.1955, 279 S.W.2d 245, 248.

[1] The right to procure an excess quantity of land in contemplation of reasonably anticipated future necessity provides an example. See McGee v. City of