COMMONWEALTH of Kentucky TRANSPORTATION CABINET DEPARTMENT OF HIGHWAYS, Appellant,

v.

Gordon TAUB, Appellee.

No. 88–SC–141–DG.

Supreme Court of Kentucky.

Dec. 15, 1988.

Rehearing Denied April 6, 1989.

C. Kilmer Combs, Bert T. Combs, Wyatt, Tarrant & Combs, Lexington, for appellant.

Kent Masterson Brown, Joseph L. Arnold, Nunn Odear & Arnold, Lexington, for appellee.

LAMBERT, Justice.

At issue in this case is the legality of certain condemnation proceedings instituted by the Transportation Cabinet to acquire property for construction of the Toyota Access Road. After hearing the evidence and rendering detailed findings of fact and conclusions of law, the trial court held that the Commonwealth properly exercised its right of eminent domain and judgment was entered accordingly. On appeal, a divided panel of the Court of Appeals reversed.

The primary basis for the decision of the court below was its view that the Transportation Cabinet failed to exercise the discretion entrusted to it by the General Assembly; that it merely acted as a "rubber stamp" for an agreement between the Commerce Cabinet and Toyota. The majority concluded that such constituted an abuse of discretion, bad faith or fraud. In view of the significance of the legislative delegation of authority to the Transportation Cabinet for the condemnation of private land for the purpose of building highways, KRS 177.081(1) *, this Court granted discretionary review and now reverses the Court of Appeals.

In the summer of 1985, the Governor of Kentucky was informed by the Toyota Motor Corporation of its intention to build an automobile manufacturing plant somewhere in the United States. The Commonwealth was invited to solicit location of the plant in Kentucky and invited to provide information as to what incentives, if any, would be granted Toyota in the event it elected to build its plant here. In response, on September 9, 1985, Theodore M. Sauer, Jr., on behalf of the Commerce Cabinet, wrote Toyota and outlined certain incentives which would be made available at whatever site chosen if Toyota came to Kentucky. Among other things, Sauer's letter to Toyota said:

> The State will provide a four-lane access road to any of the properties recommended and is willing to consider any other highway improvements, including construction of an interstate highway exchange, of interest to your company.

About two months later, November 12, 1985, in response to a request from Sauer,

Transportation Secretary C. Leslie Dawson wrote a letter in which he provided the Commerce Cabinet with a cost estimate for the relocation of U.S. 62 to serve a proposed industrial park in Scott County. Within the next few weeks, and in an effort to make a preliminary analysis as to needed highway improvements in the event Toyota located its facility at the Scott County site, Secretary Dawson and State Highway Engineer R.K. Capito, visited the site and reviewed maps of the area. Thereafter, on December 4, 1985, Secretary Dawson wrote Toyota in part as follows:

> Should Toyota Motor Corporation decide that the location of its proposed automobile manufacturing facility (the "Facility") shall be the proposed site near Georgetown, in Scott County, Kentucky as outlined in yellow on the map attached to this letter (the "Georgetown Site"), the Commonwealth of Kentucky ("Commonwealth") shall promptly cause the following highway improvement projects to occur:
>
> 1. U.S. Highway 62 ("U.S. 62") shall be reconstructed as a minimum four-lane divided highway from the I-75 and U.S. 62 interchange to at least five hundred (500) feet past that point on the map attached hereto (the "Map") indicating the intersection between U.S. 62 and a new section of Barkley Pike along the frontage of Parcel 70-1. This reconstructed portion of U.S. 62 between I-75 and relocated Barkley Pike shall contain at least one access point to the Georgetown Site at a location designated by Toyota.

---

* As KRS 177.081(1) defines the authority of the Commonwealth to condemn land for highway purposes and the language of the statute will be referred to in this opinion, we quote the statute in its entirety:

> The Commonwealth of Kentucky, bureau of highways, when it has, by official order, designated the route, location or relocation of a highway, limited access highway, bridge, roadside park, borrow-pit, quarry, garage or other property or structure deemed necessary for the construction, reconstruction, or maintenance of an adequate system of highways, may, if unable to contract or agree with the owner or owners thereof, condemn the lands or material, or the use and occupancy of the lands designated as necessary. All property acquired by the Commonwealth of Kentucky, bureau of highways, shall be in fee simple whenever so specified in the petition filed in the action. The official order of the bureau of highways shall be conclusive of the public use of the condemned property and the condemnor's decision as to the necessity for taking the property will not be disturbed in the absence of fraud, bad faith, or abuse of discretion.

2. From the new intersection of U.S. 62 and relocated Barkley Pike, the Commonwealth shall construct a new minimum four-lane divided highway running in a northerly direction first along the eastern boundary of the Georgetown Site and finally across the Georgetown Site (along the corridor as indicated by the "dashes" on the Map) to a new intersection with Kentucky Highway 620 ("Ky. 620") at the point as shown on the map. This new highway shall contain at least two access points to the Georgetown Site.

On December 11, 1985, an official announcement was made that Toyota Motor Corporation had decided to locate its facility in Scott County.

The next event of significance occurred on December 23, 1985. On that day, Secretary Dawson signed official order no. 89501 which authorized the Transportation Cabinet to acquire the right of way needed to construct "... highway improvements related to the Toyota facility and acquisition on U.S. 62." This order stated, *inter alia,* that plans and specifications had been completed and were on file in the office of the Transportation Cabinet, a statement which later proved to be false. As of December 23, 1985, no plans had been prepared and certainly no plans were on file with the Transportation Cabinet. At this time, in fact, the plans were only in preparation and were not delivered to the Transportation Cabinet until January, 1986. Official order no. 89501 also made a determination that acquisition of all right of way and construction of the project was for public use and was necessary for an adequate system of highways. Thereafter, on February 3, 1986, Secretary Dawson signed official order no. 89554. By this order, an additional state project number was added to the original official order no. 89501. It also stated that "all other items in Official Order No. 89501 will remain the same."

On February 5, 1986, a petition was filed in the Scott Circuit Court against appellee, Taub, et al, whereby the Commonwealth sought condemnation of certain particularly described real property owned by Taub

and others. At the trial which followed, Secretary Dawson testified that the decision as to necessity was made by him after visiting the site and consulting with his engineering staff. He positively testified that his decision was not dictated to him by anyone. Finally, on June 19, 1986, and prior to entry of the final judgment, official order no. 89818 was signed. This order amended the previous official orders and by reference to plans on file expressly determined necessity to acquire the Taub property.

In support of its contention that the Court of Appeals erred in reversing the trial court, the Commonwealth directs our attention to KRS 177.081, an act by which the Legislature delegated broad authority to the bureau of highways (Department of Transportation) to determine necessity and condemn land for an adequate system of highways. The Commonwealth contends that the Secretary exercised his discretion under the statute in an informed manner in making such determination, and absent a showing of fraud, bad faith, or abuse of discretion, the decision of the Secretary is final. The Commonwealth relies upon this Court's decisions in *Commonwealth, Dept. of Highways v. Burchett,* Ky., 367 S.W.2d 262 (1963) and *Commonwealth, Dept. of Highways v. Vandertoll,* Ky., 388 S.W.2d 358 (1965).

Taking a contrary position, Taub maintains that the decision to build the Toyota Access Road was made by the Governor and Commerce Cabinet and the action of the Secretary merely amounted to a ratification of their decision. He further contends that official order no. 89501 signed on December 23, 1985, is a nullity due to the inaccuracies it contains and is thus insufficient to support the condemnation action.

Upon our grant of the Commonwealth's motion for discretionary review, this Court undertook review of the decision of the Court of Appeals. We will not address issues raised but not decided by the Court below. It is the rule in this jurisdiction that issues raised on appeal but not decided will be treated as settled against

the appellant in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review. CR 76.21(1); *Nashville, C. & St.L. Ry.Co. v. Banks,* 168 Ky. 579, 182 S.W. 660 (1916); and *Eagle Fluorspar Co. v. Larue,* 237 Ky. 263, 35 S.W.2d 303 (1931). In this case, counsel for Taub argued that the Secretary of Transportation is without power to certify a road for condemnation which is not in the six-year plan or expressly authorized by the General Assembly. This issue was touched upon by Taub in the Court of Appeals but not commented upon by the Court in its opinion. As such, the issue is deemed to have been decided adversely to Taub and his failure to file a cross-motion for discretionary review precludes further review in this Court.

The principal issue before us is whether the Court of Appeals properly fulfilled its role as a reviewing court or whether it exceeded the scope of its review and invaded the province of the trial court. Specifically, we consider whether the Court of Appeals observed proper deference to the role of the trial court as fact-finder. CR 52.01.

In its findings of fact, the trial court discussed at length the evidence presented. It noted the negotiations between the Commerce Cabinet, the Governor, Toyota, and the Department of Transportation, and acknowledged that such negotiations no doubt influenced the decision as to the nature and extent of highway improvements. There was extensive discussion of the documentary evidence and the testimony by various witnesses. Based on the foregoing, the trial court said:

> This court does not believe that it necessarily follows that the evidence demonstrates that Secretary Dawson did not make his own determination of necessity. He visited the site and consulted with his engineers. He studied maps of the area and considered information that related to employment estimates and various other information about the impact of Toyota's proposed facility.
>
> . . . .

This court believes that the testimony sufficiently indicates that Secretary Dawson properly exercised his own discretion in determining the question of necessity.

In stark contrast with the trial court's findings, the Court of Appeals stated:

> We are convinced, however, that the Transportation Cabinet exercised no discretion whatsoever regarding the TAR (Toyota Access Road). The chronology of events in this case discloses that the decision to build a four-lane highway at any of the proposed sites was made by the Commerce Cabinet and the Toyota Corporation long before the Transportation Cabinet became aware of the incentive package, of which the road was an integral component.

In their briefs the parties argue at length about whether CR 52.01 applies to the trial court's finding that Secretary Dawson properly exercised his own discretion on the question of necessity. While this finding may encompass the ultimate issue before the trial court as it required a determination of the Secretary's state of mind at the time the decision was made, it was a question of fact nevertheless. Such a determination is better made by one who hears the evidence and has an opportunity to judge credibility.

While the courts of this Commonwealth have not heretofore decided whether the requirements of CR 52.01 apply to ultimate facts as well as subsidiary facts, in *Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Supreme Court squarely addressed the issue and determined that regardless of whether a fact is an ultimate fact or a subsidiary fact, it is subject to the clearly erroneous standard. In *Pullman,* the issue was whether a manufacturer possessed the necessary "discriminatory intent" to constitute a violation of 42 U.S.C. § 2000e–2(a). The United States Court of Appeals for the Fifth Circuit had taken the view that it was entitled to independently determine discriminatory intent because such was an ultimate fact. Reversing, the Supreme Court said:

Rule 52(a) broadly requires that findings of fact not be set aside unless clearly erroneous. It does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous. It does not divide facts into categories; in particular, it does not divide findings of fact into those that deal with "ultimate" and those that deal with "subsidiary" facts.

*Id.* 456 U.S. at 287, 102 S.Ct. at 1789.

In *Pullman,* the fact in issue was "discriminatory intent" and in the instant case, the fact is "independent exercise of discretion." The nature of the inquiry is the same.

The rule announced in *Pullman* was followed in *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) and the reason behind it was described as follows:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' rather than a 'tryout on the road.'" (Citation omitted.) For these reasons, review of factual findings under the clearly erroneous standard—with its deference to the trier of fact—is the rule, not the exception.

*Id.* 470 U.S. at 574, 105 S.Ct. at 1511, 84 L.Ed.2d at 528.

■ In summary, the evidence presented by the Commonwealth was ample to sustain the trial court's findings of fact. The evidence which persuaded the trial court was fully set forth and provided a sufficient basis for meaningful appellate review. In significant disregard of those findings, the Court of Appeals decided that the "chronology of events" compelled a contrary result. Such was beyond the permissible scope of its review.

Next we turn to official order no. 89501 signed by Secretary Dawson on December 23, 1985. Having previously determined that the trial court's finding that Secretary Dawson properly exercised his discretion is not clearly erroneous, of what effect then are the factual inaccuracies contained in the Secretary's order?

By the terms of KRS 177.081, the issuance of an official order is a condition precedent to the right of the Commonwealth to condemn land for public highways. It does not follow, however, that only one official order may be issued in connection with a particular condemnation proceeding. Official orders are subject to amendment by the Secretary and the official order of December 23, 1985, was amended by official order no. 89554 signed on February 3, 1986. This order correctly referred to plans and specifications on file with the Department of Transportation and directed acquisition of the described property including the Taub property. Thus, at the time litigation was commenced, February 5, 1986, the official orders were proper.

■ In *Commonwealth, Dept. of Highways v. Salmon Corp.,* Ky., 489 S.W.2d 32 (1972), this Court clearly implied that official orders are subject to amendment or reissuance. Discerning nothing in the statute which prohibits such and seeing no practical reason for prohibition, we hold that an official order pursuant to KRS 177.-081 may be amended by the Transportation Cabinet. Of course, an amended official order is subject to the restrictions set forth in the statute applicable to the original order.

In the *Salmon* case, this Court held that the Commonwealth was without authority to condemn the land in question because no official order had been entered designating the parcel as necessary. Recognizing the necessity for adjustments in plans, we nevertheless held:

> We cannot accept the proposition that land not officially designated for condemnation can be condemned simply on the basis of decisions at the engineering level.

The facts in the case at bar are totally different. By the time the condemnation petition was filed in the circuit court, all plans and specifications were complete and on file as shown by the official orders. We need not decide whether the official order of June 19, 1986, applied retroactively to the date the condemnation petition was filed. That portion of the February 3, 1986, order which said "all other items in Official Order No. 89501 will remain the same" was sufficient.

Taub makes much of the fact that the condemnation petition references only the official order of December 23, 1985, and omits any reference to the subsequent official orders. This argument is without merit for two reasons: First, by the time the petition was filed, the defects in the original order were cured, and second, the petition particularly describes the Taub property. It is significant that Taub makes no claim of being misled or uninformed about the proceedings.

■ In summary, KRS 177.081(1) grants the Department of Transportation broad discretion to determine necessity for acquisition of land to build highways. Upon a determination of necessity, the Commonwealth's right of acquisition may be defeated only by proof of fraud, bad faith or abuse of discretion, and the landowner opposing condemnation bears the burden of proof. *Commonwealth, Dept. of Highways v. Burchett, supra,* and *Commonwealth, Dept. of Highways v. Vandertoll, supra.* After hearing the evidence, the trial court was not persuaded that Taub had sufficiently proved his case. Having thoroughly reviewed the issues raised and

evidence presented, this Court is unable to conclude that the trial court's findings of fact were clearly erroneous.

Accordingly, the decision of the Court of Appeals is reversed and the judgment of the Scott Circuit Court is reinstated.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., concurs by separate opinion.

LEIBSON, Justice, concurring.

I concur with the Majority Opinion except on one point.

At p. 52 of the Majority Opinion we confront Taub's argument that the Secretary of Transportation was without power to certify the road for condemnation because it was not in the six-year plan for highway and related improvement or otherwise expressly authorized by the General Assembly. Our Opinion disposes of this question on procedural grounds as an issue "raised on appeal but not decided," holding in substance that because the Court of Appeals' Opinion did not address this issue it would be "treated as settled against" the respondent because he failed to preserve it by cross-motion for discretionary review.

The Majority Opinion cites cases which are not on point: *Nashville, C. & St.L. Ry. Co. v. Banks,* 168 Ky. 579, 182 S.W. 660 (1916) and *Eagle Fluorspar Co. v. Larue,* 237 Ky. 263, 35 S.W.2d 303 (1931).

Both of these cases were decided, of course, long before we had a two-tiered appellate court system and a motion for discretionary review procedure. Both cases involved a second appeal after retrial in the trial court after decisions of the Court of Appeals, then our supreme court. In both cases the appellant had raised different issues on the first appeal, some of which called for reversal and remand, and some of which called for reversal and dismissal. When the supreme court reversed and remanded, omitting discussion of issues which, if sustained, would have called for dismissal, *obviously* the effect of tak-

ing this step was to overrule the appellant on the issues that called for dismissal.

In short, the cases cited are inapposite. The extension of a valid principle to present circumstances, requiring a cross-motion for discretionary review on the part of the party prevailing in the Kentucky Court of Appeals as to arguments which the Court of Appeals found it unnecessary to decide after it had already granted the relief sought on other grounds will present a procedural quagmire. It is a hypertechnical approach which provides procedural stumbling blocks against a respondent to a motion for discretionary review, inhibiting the arguments in his Briefs which are directed against the issues raised against him simply because they were disposed of in the Court of Appeals on other grounds.

There is no reason for us to have a rule requiring a cross-motion for discretionary review before arguments can be made in our Court which address the issues raised by the movant on discretionary review on other grounds. Indeed, I do not believe our Court intends to go this far.

However, the point raised by the respondent, Taub, is lacking in substance on other grounds. The Transportation Cabinet's statutory authority for this condemnation is found in KRS 177.020–.081 without limitation to any specific designation in a six year plan or express statutory authorization for the project. The requirements relate only to a legitimate exercise of discretion within the existing executive and legislative framework.

At the time this condemnation suit was filed the Governor had authorized the project and the necessary supporting legislation was pending. That legislation (S.B. 361) was enacted and signed into law before the trial of this case, thus rendering moot (indeed absurd) any question that the Secretary's order was for an unauthorized project. The trial court's Findings of Fact and Conclusions of Law specify that "the argument that the Commonwealth's right to condemn may somehow be affected by the failure of the 'six year' plan to include this proposed road project is of no merit, in view of Senate Resolution # 7." I agree.

S.J.R. 7, approved February 24, 1986, was a joint resolution of the General Assembly "pledging to enact legislative measures during the 1986 session to develop, staff, fund, support and maintain the programs and incentives pledged to the Toyota Motor Corporation in return for its commitment to the economic development of the Commonwealth," including:

"(3) Highway improvement and construction program in the vicinity of the Georgetown, Kentucky site to serve the transportation needs of the Toyota Automotive Manufacturing Facility, its employes and the community, estimated to cost $47,000,000."

True to this resolution, the General Assembly enacted such legislation and it was signed into law by the Governor by April, 1986, all before this case came to trial. There is no substance to the respondent's claim that this road is unauthorized. Therefore, I agree with the Majority Opinion, although I disagree with the decision that Taub had no right to present this argument because he failed to file a cross-motion for discretionary review.