**BOARD OF TRUSTEES OF the UNIVERSITY OF KENTUCKY and Dean John B. Stephenson, Appellants,**

v.

**Dr. Joseph Murray HAYSE, Appellee.**

**Dr. Joseph Murray HAYSE, Cross-Appellant,**

v.

**BOARD OF TRUSTEES OF the UNIVERSITY OF KENTUCKY and Dean John B. Stephenson, Cross-Appellees.**

Nos. 88–SC–283–DG, 88–SC–289–DG.

Supreme Court of Kentucky.

Nov. 9, 1989.

Rehearings Denied Feb. 8, 1990.

Chauncey S.R. Curtz, Debra H. Dawahare, Karen J. Greenwell, Wyatt, Tarrant & Combs, John C. Darsie, Gay M. Elste, Office of Legal Counsel, University of Kentucky, Lexington, for appellants, cross-appellees.

William C. Jacobs, Lexington, for appellee, cross-appellant.

Robert F. Matthews, Barbara R. Hartung, Richard J. Emmett, Greenebaum Doll & McDonald, Thomas H. Lyons, University Counsel, University of Louisville, Louisville, for amicus curiae University of Louisville.

LEIBSON, Justice.

This is an action by a former University of Kentucky Professor, Dr. Joseph M. Hayse, seeking damages against the University of Kentucky Board of Trustees and Dr. John B. Stephenson, who was then the Dean of Undergraduate Studies, for wrongfully terminating his employment, and also seeking reinstatement and award of tenure.

█ We do not write upon a clean slate. The Kentucky Court of Appeals established the law in this case in an unpublished opinion rendered February 26, 1982, in *Hayse v. Board of Trustees of the University of Kentucky and Stephenson*, 81–CA–1604–MR. Under the finality doctrine, the issues as adjudicated in that Opinion, explicitly or implicitly, were thereafter the "law of the case," binding on remand and binding on this second appeal. *See Burkett v. Board of Ed. of Pulaski County*, Ky.App., 558 S.W.2d 626 (1977); *City of Louisville v. River Excursion Co.*, 253 Ky. 95, 68 S.W.2d 792 (1934); and a host of cases cited in Vol. 2, *Kentucky Digest*, Appeal and Error, §§ 1096–1099. This rule applies with equal force when the prior opinion is unpublished (*Penco, Inc. v. Detrex Chemical Industries, Inc.*, Ky., 672 S.W.2d 948 (1984)), and when the issue urged as improperly decided is constitutional (*Madden's Ex'r. v. Commonwealth*, 277 Ky. 343, 126 S.W.2d 463 (1939), aff'd, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940)).

This case has a long history. In 1971, Hayse was employed as an instructor in the University of Kentucky Honors Program. Hayse had been recruited by Dr. Robert O. Evans, Director of the Honors Program, while Hayse was a Ph.D. candidate in Comparative Literature at the University of Wisconsin. In June 1976, Hayse was promoted to Assistant Professor and remained in such position through June 1978. During the academic year of 1976–77, through his Director, Dr. Evans, Hayse submitted an application for promotion to the level of Associate Professor, with tenure. Stephenson, as Dean of Undergraduate Studies, had supervisory authority over the Honors Program. Hayes claims his employment was terminated in violation of First Amendment rights to freedom of association and Fifth Amendment guarantees of due process because of a raging internal dispute between Stephenson and Evans involving differences over the Honors Program.

Hayse was recommended for tenure by his Department Chairman, Dr. Evans. This recommendation was forwarded to Stephenson, who rejected his application. Hayse was then given a one-year terminal appointment in which to seek another position. Hayse made a second application for tenure during the 1977–78 academic year and his application was again endorsed by Dr. Evans but was again denied by Dean Stephenson.

The University's Regulations did not authorize the Dean to reject appointment to the rank of Associate Professor. His authority was limited to reviewing the proposal, adding his endorsement or commentary, and forwarding everything through channels, ultimately to the Board of Trustees, which had the exclusive final authority to approve or disapprove the application. The University and Stephenson dispute this interpretation of the Regulations, claiming the procedure was altered by custom and application. But this dispute was resolved by the Court of Appeals in its Opinion on the first appeal of this case. This 1982 Court of Appeals Opinion states in pertinent part:

"The university further contends that as a matter of practice and custom all recommendations for promotion are passed on for higher review only in the event they are approved by the dean of the college. This is not the procedure established by the regulations which have been adopted and custom cannot be

allowed to supersede the duly adopted procedures."

Shortly after receiving this second rejection, Hayse met with Stephenson and pointed out to him that under University regulations Stephenson did not have the sole power to reject his application. In response to Hayse's objection, Stephenson appointed a three-person committee to assist him in reconsidering Hayse's application. This committee also recommended against tenure. Hayse again protested, indicating Stephenson was still not following University regulations. Subsequently, and in response to Hayse's continuing objections, Stephenson forwarded Hayse's file to two different committees, a Vice–President, and ultimately, President Otis Singletary, all of whom sustained the denial of tenure. The application and supporting documents were never forwarded to the Board of Trustees to consider Hayse's application as the Regulations prescribed.

On May 5, 1978, Hayse was notified of his failure to receive tenure with the explanation that he did not meet the research and publication requirements. Hayse disputed this and contended that his dismissal resulted from the ongoing dispute between Dr. Evans, his direct supervisor, and Stephenson, the Dean of Undergraduate Studies. He also alleged that the University failed to follow its own regulations governing tenure.

On March 27, 1978, Hayse filed an action in Franklin Circuit Court against the Board of Trustees of the University of Kentucky and Dean Stephenson alleging that he was wrongfully denied tenure. He demanded damages and reinstatement at the rank of Associate Professor. In May 1981, Hayse amended his Complaint by adding allegations of constitutional rights violations of the First, Fifth and Fourteenth Amendments to the United States Constitution and Section 2 of the Kentucky Constitution. The Board of Trustees and Stephenson denied the allegations, pled sovereign immunity, and argued both that Hayse's constitutional rights were not violated and that Stephenson acted appropriately in denying tenure.

On May 27, 1981, the Franklin Circuit Court granted Summary Judgment in favor of the Board and Stephenson. The first appeal, *supra,* followed. The Court of Appeals reversed, holding that the University had failed to follow its own regulations, and, citing *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), remanded the case to the trial court for the purpose of giving Hayse the opportunity to prove "that constitutionally protected conduct was a substantial or motivating factor in the rejection of his promotion *unless the University can then convince* the trier of fact that *Hayse's promotion would have been denied anyway,* even if there had been no consideration of impermissible facts." [Emphasis added.]

Subsequent to this remand by the Court of Appeals, Hayse filed a second amended complaint adding a claim under 42 U.S.C. § 1983 based on the *same* constitutional rights violations he had previously alleged in the Amended Complaint filed in 1981 before the first appeal. This theory of liability was based on the same facts held to state a cause of action for constitutional violations as per the *Mount Healthy City Board of Education* case, *supra,* on the original appeal.

The case then proceeded to trial on January 29, 1986, with the jury returning a verdict in favor of Hayse awarding him $61,760 in compensatory damages for loss of earnings, damage to professional reputation, and damages for embarrassment, humiliation and emotional distress. These are the elements of damages in the instructions, and they have not been challenged on this appeal. The trial court then ordered Hayse reinstated at the rank of Associate Professor with tenure.

Following the trial, the Board of Trustees and Stephenson filed a Motion for Judgment Notwithstanding the Verdict, which the trial court sustained, holding that the evidence at trial was insufficient to support the jury's verdict and that there was no evidence upon which reasonable minds could conclude that impermissible considerations were a motivating factor in

the denial of tenure to Hayse. The problem is that this was substantially the *same* evidence which Hayse had represented that he would produce when he prevailed on his first appeal.

The Court of Appeals, rendered its Opinion on this second appeal on December 11, 1987, as modified April 1, 1988. It held, in pertinent part, that the trial court erred in granting Judgment Notwithstanding the Verdict. Further, it held the amended complaint was not, as claimed, in violation of the statute of limitations. But then it reached the same result as the trial court, denying compensation, by deciding the Board of Trustees and Stephenson were protected by sovereign immunity from monetary damages. Finally, the Court of Appeals reversed the trial court's decision that Hayse was not entitled to injunctive relief mandating reinstatement to Associate Professor with tenure, holding that sovereign immunity does not apply to prospective injunctive relief against state officials.

Thus the Court of Appeals agreed with Hayse that the trial court erred in deciding the evidence was insufficient to prove the facts alleged as a cause of action on the first appeal, but nevertheless, on grounds of sovereign immunity, sustained the result denying monetary damages, and then ordered that Hayse be reinstated as an Associate Professor with tenure. For the reasons that follow, we affirm the Court of Appeals on some issues, but we reverse the holding of the Court of Appeals.

## I. STATUTE OF LIMITATIONS

■ The Court of Appeals held that Hayse's federal constitutional claims were not time barred by the statute of limitations. Both sides agreed that the state statute of limitations for personal injuries governs claims under the Federal Constitution and 42 U.S.C. § 1983, *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); accord *Frisby v. Board of Education of Boyle County*, Ky.App., 707 S.W.2d 359, 361 (1986). In Kentucky, a claim must be brought within one year after the cause of action accrues. KRS 413.140(1)(a).

The statute of limitations dispute turns on the date upon which Hayse's cause of action accrued. The Board of Trustees and Stephenson argue that the statute began to run in February, 1977, when Hayse received and signed his one-year terminal employment contract. Hayse, on the other hand, contends that the statute did not begin to run until May 5, 1978, the date he was officially notified that his second application for tenure had been rejected.

We agree with the Court of Appeals that neither Hayse's federal constitutional claims nor his claims under 42 U.S.C. § 1983 are time barred, and accordingly affirm. The Board of Trustees and Stephenson admit that the official notice of the rejection of Hayse's second tenure application was not received until May 5, 1978. It was on this date that the University's decision became final and the statute began to run. Since Hayse filed his Complaint within a year of May 5, 1978, the statute of limitations was met. Further, by operation of CR 15.03(1), Hayse's subsequently Amended Complaints averring violations of the United States Constitution and 42 U.S.C. § 1983 relate back to the date of the original complaint because said claims arose out of the same conduct, transaction or occurrence set forth or attempted to be set forth in the original Complaint.

## II. SOVEREIGN IMMUNITY AND SUFFICIENCY OF THE EVIDENCE

■ As previously stated, upon the prior appeal the appellate court determined there was a jury question as to whether Dr. Hayse was denied promotion because of the "internal dispute [that] was raging between the dean of the college and the head of his department," and thus "penalized because of his exercise of [his constitutional right to] freedom of association." The law of this case upon retrial was:

"According to the rationale of *Mount Healthy City Board of Education, supra,* appellant is entitled to relief if he can show that constitutionally protected conduct (i.e., 'exercise of his freedom of

association') was a substantial or motivating factor in the rejection of his promotion unless the University can then convince the trier of fact that appellant's promotion would have been denied anyway even if there had been no consideration of impermissible factors."

This remand with no discussion of the sovereign immunity defense, which had been raised and, which, if appropriate, would call for dismissal, forecloses further litigation of these questions as a matter of law. *See Nashville, C. & St. L. Ry. Co. v. Banks,* 168 Ky. 579, 182 S.W. 660 (1916) and *Eagle Fluorspar Co. v. Larue,* 237 Ky. 263, 35 S.W.2d 303 (1931), recently cited with approval in *Com. Transp. Co. v. Taub,* Ky., 766 S.W.2d 49, 52 (1988). Our rule is that issues which, if sustained, call for dismissal, are taken as decided and rejected when the case has been reversed and remanded on the first appeal.

■ The question of federal civil rights violations was put in issue by Dr. Hayse's Amended Complaint filed May 18, 1981, alleging that he was "denied due process in violation of Amendments 5 and 14," that "Defendant Stephenson's refusal to follow established procedure because of Plaintiff's association with Dr. Evans violated Plaintiff's First Amendment rights," and that "plaintiff was denied the equal protection to which all other faculty members seeking tenure and promotion are entitled." None of these charges were substantively enlarged when the Second Amended Complaint filed after the appeal specifically referred to 42 U.S.C. § 1983. The defense of sovereign immunity was raised initially, before the first appeal, and the effect of its rejection by reason of the decision of the first appeal was not lost when the same claim was reasserted in a second amended complaint specifically referring to § 1983.

Upon remand the case was properly submitted to a jury against both the Board of Trustees and Dean Stephenson under instructions stating the law of the case as decided by the Court of Appeals.

The jury then answered Interrogatories based on these instructions to the effect: (1) Dean Stephenson considered constitu-tionally "impermissible factors ... in rejecting Dr. Hayse's application(s) for promotion," and (2) the University would *not* have "disapproved Dr. Hayse's application(s) for promotion to the rank of Associate Professor, with tenure," but for consideration of these constitutionally "impermissible factors."

The Court of Appeals, in reversing the Judgment Notwithstanding the Verdict, stated that Dr. Hayse's evidence proving that constitutionally impermissible factors were considered in denying his promotion, albeit circumstantial, "was sufficient to raise a jury question." The evidence was no different from what was represented to the Court of Appeals on the first appeal when it reversed the Summary Judgment and established the law of the case. The question whether these facts represent a violation of Dr. Hayse's constitutionally protected right to freedom of association, while it might otherwise be the subject for legal dispute as an original proposition, has already been decided on the first appeal. It will not now be revisited.

Further, the trial court's Judgment Notwithstanding the Verdict cannot be sustained upon the theory that Dr. Hayse's "promotion would have been denied anyway even if there had been no consideration of impermissible factors." Under *Mt. Healthy City Board of Ed.,* quoted *supra,* the Board of Trustees and Dean Stephenson, not Dr. Hayse, were the parties who had the burden of persuading the jury on this point, and they failed to do so. We cannot properly direct a verdict on the statements of interested parties regarding their version of the facts, even if uncontradicted. This defense was submitted to the jury under instructions which have *not been appealed* and by specific interrogatory, and the jury rejected this defense. The jury's verdict should be sustained.

■ The doctrine of sovereign immunity has been misapplied as a shield to Dean Stephenson. In the first place, as previously discussed, sovereign immunity as a defense was foreclosed by the first appeal. In the second place, the doctrine of sovereign immunity does not apply to Dean Ste-

phenson under the circumstances in this case in any event. Dean Stephenson was sued for his personal wrongdoing, direct responsibility for violating Hayse's constitutionally protected rights. The fact that this wrongdoing occurred while serving in his official capacity does not entitle him to the defense of sovereign immunity. Our recent decision in *Gould v. O'Bannon*, Ky., 770 S.W.2d 220 (1989), finality June 8, 1989, and our decision of long-standing in *Happy v. Erwin*, Ky., 330 S.W.2d 412 (1959), lay this matter to rest.

 The argument to the contrary reflects a glaring misunderstanding of the difference between liability of a state official for personal wrongdoing and nonliability where the claim is premised solely on his representative status, or official capacity. Officials have no vicarious liability for acts of subordinates in which they are not directly involved, i.e., bear no personal responsibility. This has no bearing on liability for one's own personal misconduct in violation of 42 U.S.C. § 1983. 42 U.S.C.A. § 1983, Notes 1246–49, and Supplement, are replete with cases illustrating this point. Whereas the official capacity of individual members of the U.K. Board of Trustees does not subject them to liability because they bear no direct complicity in this sad affair, Dean Stephenson's status as a public official provides no protection for the misconduct which the jury has directly attributed to Dean Stephenson.

 Nor does the "official immunity doctrine," which protects a government official in making decisions involving the exercise of discretion (*See* Black's Law Dictionary, 5th ed. 1979, p. 978), apply to this case. It protects decision making by a public official only *if* his acts are not otherwise wrongful. But official immunity is no defense in present circumstances to claims grounded in constitutionally impermissible misconduct. On the contrary, such misconduct is the gravamen of a civil rights claim:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

There has never been any doubt in this case until now that Dean Stephenson was sued individually, that there were two defendants, Dean Stephenson *and* the Board of Trustees. The Complaint sought recovery against him individually, as well as seeking recovery against the Board of Trustees. The jury instructions, without objection, identified Stephenson as a separate defendant subject to an award of damages against him, personally. He did not enjoy sovereign immunity on grounds that his alleged wrongdoing was performed while serving in his official capacity, nor does the wrongdoing with which he is charged qualify as discretionary acts covered by the official immunity doctrine.

Since this case was taken under submission, the United States Supreme Court's decision in *Will v. Michigan Dept. of State Police*, — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) has resolved an ongoing controversy as to whether a state or state agency enjoying sovereign immunity under state law can be held liable in a state court action brought under 42 U.S.C. § 1983 for the constitutionally impermissible acts of a subordinate. The *Will* case resolves this conflict, holding that neither a state nor state officials, where the claim "is not a suit against the official but rather is a suit against the official's office" (109 S.Ct. at 2311), are "persons" within the meaning of § 1983, and therefore this civil rights statute does not override the state sovereign immunity of such state agencies and officials, where there is immunity under state law. This decision would apply to the *respondeat superior* liability Board of Trustees if its potential liability had not already been laid to rest by the finality of the decision on prior appeal. It has no application to individual acts of wrongdoing of state officials as the "persons" identified as liable under § 1983.

There is no valid legal reason why the award of damages at the trial of this case should not be affirmed. The trial was conducted in conformity with the law as stated on the first appeal, and the evidence was sufficient to support the verdict.

### III. PROSPECTIVE INJUNCTIVE RELIEF

■ Hayse has also demanded reinstatement as a tenured professor, or what amounts to prospective injunctive relief. As the Court of Appeals correctly points out, 231 of the Kentucky Constitution does not differentiate between suits for monetary damages and suits for injunctive relief. Many states though, have made such distinctions. *See, e.g., Beck v. Kansas Adult Authority,* 241 Kan. 13, 735 P.2d 222, 226 (1987) and *Bagg v. University of Texas Medical Branch of Galveston,* 726 S.W.2d 582, 584 (Tex.App.1987). The reasoning for this distinction stems from the landmark United States Supreme Court decision in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The effect of the *Ex Parte Young* doctrine is to bring within the scope of judicial review alleged unconstitutional actions of state officials which might otherwise escape such review and to subject state governments and their instrumentalities to certain restrictions of the United States Constitution that they might otherwise be able to ignore. The Kentucky Constitution § 231 cannot be used as "a bar to litigants seeking prospective injunctive relief for violations of federally protected rights against state officials." *Id.* Hayse is entitled to further pursue his claim for reinstatement because he was initially denied administrative due process.

Nevertheless, under our decision in *Brown v. Jefferson County Police Merit Bd.,* Ky., 751 S.W.2d 23, 27 (1988)

> "To correct the procedural error of the administrative body, the appropriate relief is to remand the case to the administrative agency to decide the merits of the controversy."

Thus, Dr. Hayse is not entitled to reinstatement. He is only entitled to have his application for tenure considered *ab initio* by the Board of Trustees under the rules and regulations pertaining thereto at the time tenure was denied him.

The trial court's Judgment Notwithstanding the Verdict is vacated, and the verdict and judgment thereon for damages reinstated. The separate judgment of the trial court denying injunctive relief against the Board of Trustees is also vacated, but *not* as the Court of Appeals ordered, to "order the reinstatement of [Dr. Hayse] to the position he had been denied—that of associate professor with tenure." Instead, in compliance with *Brown v. Jefferson County Police Merit Bd., supra,* the trial court shall enjoin the University of Kentucky Board of Trustees to consider Dr. Hayse's application as stated above, under the rules and regulations pertaining thereto at the time tenure was denied him.

COMBS, LAMBERT and VANCE, JJ., concur.

ANGGELIS, Special Justice, dissents by separate opinion in which GANT and WINTERSHEIMER, JJ., join.

ANGGELIS, Special Justice, dissenting.

For the reasons set forth below, I respectfully dissent.

### I. "LAW OF THE CASE" AND SOVEREIGN IMMUNITY

The majority makes a serious error when it holds that the "law of the case" as established by the Court of Appeals forecloses the sovereign immunity defense in subsequent appeals of the case *sub judice.* Such a holding ignores the breadth and importance of the sovereign immunity defense for agencies and officials of the Commonwealth.

The majority opinion cites *no* case in which the sovereign immunity defense has been foreclosed by application of the "law of the case". We should not now establish this dangerous precedent. Although the majority alleges that Dean Stephenson was sued in his individual and not official capac-

ity, it does *not* dispute the fact that the Board of Trustees is an entity that would otherwise be entitled to the sovereign immunity defense but for the "law of the case" rule.

We have always held that the sovereign immunity defense is a constitutional protection that can be waived *only* by the General Assembly and *applies regardless of whether the defense was pled in an answer or even relied upon. Wells v. Com., Dept. of Highways,* Ky., 384 S.W.2d 308 (1964). (Emphasis Supplied). Thus, until today sovereign immunity could not be waived by an application of the "law of the case" or by failure to plead such affirmative defense or by the failure to properly preserve it for appellate review to this Court.

In point of fact, sovereign immunity cannot be waived through the negligence, intentional act or stipulation of an employee, an agency, or a department of the Commonwealth of Kentucky nor any attorney representing any of these enumerated individuals or entities.

In the case at Bar, the majority has created a *judicial* exception to Section 231 of the Kentucky Constitution wherein the "law of the case" can be used to create a waiver of sovereign immunity. This is the province of the General Assembly, it is not for the judiciary to erode this historical protection. Our Constitution does not provide for this unnecessary judicial intrusion. Under the authority of *Union Light, Heat & Power Company v. Blackwell's Adm'r.,* Ky., 291 S.W.2d 539 (1956), this Court should not allow the *clearly erroneous* decision of the Court of Appeals to establish a waiver of sovereign immunity.

## II. OFFICIAL CAPACITY OF DEAN STEPHENSON

The majority opinion contends that Dean Stephenson was sued in his individual capacity in spite of overwhelming evidence to the contrary. No where in any of the pleadings of this lengthy litigation is there ever any reference to John B. Stephenson being sued as an individual or that he was sued in any other than his official capacity

as Dean when he denied Hayse tenure. The initial complaint, as well as the subsequently amended complaints, sought recovery against "Dean" Stephenson and the Board of Trustees, both public entities deserving of sovereign immunity protection.

The jury instructions did not identify John B. Stephenson as an individual defendant rather, they referred to him as "Dean" Stephenson. Also, and contrary to the position of the majority, the jury instructions provided that Dr. Hayse could only be awarded compensatory relief if the jury found against both Dean Stephenson *and* the Board of Trustees. Clearly, this was an improper instruction. There was an instruction tendered to the jury which would have allowed the jury to give punitive damages against Dean Stephenson if it found that Dean Stephenson acted willfully, deliberately, maliciously, or with reckless disregard of Dr. Hayse's constitutional rights, however, the jury found that such punitive relief should not be awarded.

Accordingly, I would affirm that portion of the Court of Appeals' Opinion which held that there is "nothing in the record to lead us to believe that Stephenson was sued in his individual capacity. Thus, he would be protected by the same sovereign immunity as the Board, and has no liability for monetary damages."

## III. SUFFICIENCY OF THE EVIDENCE

The trial court, was correct when it issued a judgment notwithstanding the verdict because the evidence was compelling that Dr. Hayse's promotion would have been denied anyway even if there had been no consideration of impermissible factors. It was undisputed that Dr. Hayse's application for tenure was treated in exactly the same way as every other similarly situated professor.

The majority is correct when it asserts that the Board of Trustees and Dean Stephenson had the burden of persuading a jury that Dr. Hayse's promotion would have been denied anyway. Although the jury apparently believed that the Board of Trustees and Dean Stephenson did not

meet this burden, the trial judge, clearly did. Where the record shows, as it does here, that only one fair and reasonable conclusion can be drawn from the evidence, the case should not be submitted to the jury. *Crest Coal Company, Inc. v. Bailey*, Ky., 602 S.W.2d 425 (1980).

Indeed, it was manifestly clear that Hayse would have been denied tenure. As found by the trial court, at the time Hayse applied with the University of Kentucky he stated that he expected to complete his Ph.D. in 1972, but he did not complete it until four years later. Between 1972 and 1976, Hayse was repeatedly warned and counseled about his slowness in completing the Ph.D. requirements. Additionally, Dean Stephenson and Dr. Robert O. Evans, Hayse's boss, on several occasions, expressed concern to Hayse over his failure to produce scholarly work or get anything published. This is evidenced by the fact that between August 1971 and June 1978, Hayse published no scholarly works.

The Board of Trustees and Dean Stephenson presented numerous witnesses during the six day trial of this action which provided the basis for the trial court's findings of fact when it issued its judgment notwithstanding the verdict. Even if there was a procedural defect in the University's handling of Hayse's promotion, the outcome would have been the same if no procedural defect had existed. Hayse was not discriminated against under any standard and his federally protected rights were not violated.

GANT and WINTERSHEIMER, JJ., join in this dissent.