**JEFFERSON COUNTY FISCAL COURT; Jefferson County Corrections Department; Jefferson County Merit Board; David L. Armstrong, individually and in his official capacity as Judge/Executive of Jefferson County; Ronald Bishop, individually and in his official capacity as Chief of Jefferson County Corrections Department; and Lee A. Karsner, individually and in his official capacity as Captain of Jefferson County Corrections Department, Appellants,**

v.

**Thomas PEERCE, Appellee.**

**No. 2000–SC–0534–DG.**

Supreme Court of Kentucky.

Feb. 19, 2004.

As Modified Feb. 23, 2004.

Rehearing Denied May 20, 2004.

Mitchell L. Perry, Jefferson County Attorney, Louisville, Counsel for Appellants.

Thomas C. Fenton, Morgan and Pottinger, PSC, Louisville, Counsel for Appellee.

KELLER, Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee was terminated from his position as a sergeant with the Jefferson County Corrections Department ("JCCD") because of allegations that he used excessive force in an assault upon an inmate, filed and instructed subordinates to file false incident reports about the assault, and violated sections of the Jefferson County Personnel Policies. Pursuant to a collective bargaining agreement then in place, Appellee appealed his termination to the Jefferson County Merit Board ("Merit Board"). The Merit Board found that Ap-

pellee had, in fact, engaged in the alleged conduct, but held that "in view of previous departmental discipline practices for similar breaches of conduct, [Appellee's] termination was unjustified." Thus, the Merit Board ordered JCCD to reinstate Appellee and to restore "all back pay and benefits lost as a result of the termination," but recommended that Appellee be demoted in rank from sergeant to Corrections Officer. Approximately a week after the Merit Board's decision, JCCD informed Appellee that it would not reemploy him.

Appellee then filed a petition in the Jefferson Circuit Court in which he sought to enforce the Merit Board's decision. Appellee's petition alleged that JCCD "has refused to follow the Merit Board's order to reinstate Peerce ... has not followed the appeal procedure and has instead unilaterally and improperly decided to ignore a direct order by its appellate review body, in contravention of legislative and public policy." Appellee subsequently filed an amended petition in which he joined as defendants the Merit Board and the Jefferson County authorities who made the final decision regarding his employment, *i.e.*, the Jefferson County Fiscal Court ("Fiscal Court") and Jefferson County Judge–Executive David L. Armstrong ("Armstrong"), who had written Appellee to inform him that he was "exercising his authority" to overrule the Merit Board's decision. Appellee moved for summary judgment, which the trial court granted after it concluded that "[t]he action of Jefferson County Fiscal Court and Jefferson County Judge/Executive David Armstrong inconsistent with the Order of the Jefferson County Merit Board is without effect, and the Merit Board's Order is binding." In accordance with its order of summary judgment, the trial court subsequently entered an order that required the Jefferson County Corrections Department to rein-state Appellee and to compensate him for the improper termination:

IT IS HEREBY ORDERED that the Jefferson County Corrections Department shall immediately comply with this Court's Order Granting Plaintiff Peerce Summary Judgment, and shall reinstate Peerce to his former position as a Department officer, and deliver to him all back pay and benefits due and owing Plaintiff which have accrued from the date of Plaintiff's termination to the date of Plaintiff's reinstatement in accordance with this Court's Order Granting Summary Judgment.

Appellants JCCD, Fiscal Court and Armstrong filed a joint notice of appeal from the Jefferson Circuit Court's summary judgment for Appellee. The Court of Appeals held, in what we will refer to as *Peerce I*, that Armstrong and the Fiscal Court had no authority to countermand the Merit Board's decision and thus affirmed the trial court's grant of summary judgment:

[I]t is explicitly acknowledged [in KRS 67B.050] that if a county has implemented a merit system, the merit board created thereunder shall have the authority "to employ and dismiss employees." Accordingly, neither the fiscal court nor the judge/executive has conveyed away their power to dismiss corrections employees. Rather, the legislature has vested such authority in the merit board by statute.

Appellants also make much of the fact that the Merit Board was created by the Fiscal Court and therefore, they argue that the Fiscal Court and the Judge/Executive must have final say over personnel matters and the Board can only make recommendations to them. While the Merit Board was created by Fiscal Court ordinance, the authority to do so is statutory as stated above. Moreover,

in viewing the language of the ordinance, we are further convinced that the Merit Board has the final authority over dismissals of corrections employees.... In reading the language in Ordinance 8, the question that comes to mind is, what possible significance would this subsection have, if the Judge/Executive has the final authority to overrule a decision of the Merit Board? The Judge/Executive is entitled to vote on an issue before the Merit Board only in the event of a tie. In this case, Armstrong clearly overstepped his authority by unilaterally deciding not to follow the Board's decision.

Appellants sought discretionary review from the Court of Appeals's decision, but this Court denied the motion and *Peerce I* thus became final. Upon remand, the trial court entered an order that required JCCD to reinstate Appellee to his former position, but permitted JCCD to demote Appellee in accordance with the Merit Board's decision. Appellee then returned to work, and JCCD immediately demoted him.

The trial court then granted Appellee leave to amend his previous complaint, and Appellee filed a Second Amended and Supplemental Petition that included five (5) additional state and federal causes of action relating to his previous termination and his post-reinstatement demotion:

*Second[1] Cause of Action*

The Defendants Jefferson County Corrections Department, Jefferson County Fiscal Court, and Jefferson County Judge–Executive David L. Armstrong, acting in his official capacity and individually, wrongfully and maliciously discharged the Plaintiff from his employment in violation of Chapter 67B of the Kentucky Revised Statutes and contrary to the public policy of the Commonwealth of Kentucky expressed therein, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

*Third Cause of Action*

In discharging the Plaintiff from his employment, the Defendants Jefferson County Corrections Department, Jefferson County Fiscal Court, and Jefferson County Judge–Executive David L. Armstrong, acting in his official capacity and individually, acted under color of state law and maliciously subjected the Plaintiff to the deprivation of his rights and privileges under the Constitution of the United States causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

*Fourth Cause of Action*

On June 3, 1996, the Defendant, Jefferson County Corrections Department, delivered to the Plaintiff written notice that effective June 4, 1996, the Plaintiff was demoted from his position as sergeant to the rank of officer.

In demoting the Plaintiff on June 3, 1996, the Defendant, Jefferson County Corrections Department, acted maliciously in retaliation for the Plaintiff's resort to judicial proceedings to vindicate his employment rights, contrary to the public policy of the Commonwealth of Kentucky expressed in Chapter 67B of the Kentucky Revised Statutes and Section 14 of the Constitution of Kentucky, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

*Fifth Cause of Action*

The Defendant, Jefferson County Corrections Department, wrongfully and

---

1. Appellee's First Cause of Action was the claim for enforcement of the Merit Board's order, which was adjudicated in *Peerce I*.

maliciously demoted the Plaintiff on June 3, 1996, in violation of Chapter 67B of the Kentucky Revised Statutes and contrary to the public policy of the Commonwealth of Kentucky expressed therein causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

*Sixth Cause of Action*

In demoting the Plaintiff on June 3, 1996, the Defendant, Jefferson County Corrections Department, acted under color of state law and maliciously subjected the Plaintiff to the deprivation of his rights and privileges under the Constitution of the United States causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

JCCD subsequently suspended Appellee with the intention of terminating his employment because of allegations that Appellee had written racial slurs on the wall of a detention center restroom. The trial court again granted Appellee leave to amend his complaint in response to this new development, and Appellee filed a Third Amended and Supplemental Petition, which added two (2) additional causes of action and included additional defendants:

*Seventh Cause of Action*

On or about April 8, 1997, JCCD and Bishop failed and refused to promote the Plaintiff to the position of sergeant. The Plaintiff was qualified and eligible for such promotion to sergeant.

Officers less qualified than the Plaintiff were promoted to sergeant on or about April 8, 1997.

Bishop, acting in his official capacity and individually, and JCCD, wrongfully and maliciously failed and refused to promote the Plaintiff in retaliation for the Plaintiff's exercise of his constitutional right under Section 14 of the Kentucky Constitution to petition the courts for redress, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

In failing and refusing to promote the Plaintiff, Bishop, acting in his official capacity and individually, and JCCD, acted under color of state law and maliciously subjected the Plaintiff to the deprivation of his rights and privileges under the Constitution of the United States, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

*Eighth Cause of Action*

On or about October 15, 1997, upon the recommendation of Karsner and at the direction of Bishop, JCCD suspended the Plaintiff from his employment with the express intention of terminating that employment.

Bishop and Karsner, acting in their official capacities and individually, and JCCD, wrongfully and maliciously suspended and discharged the Plaintiff from his employment without due process and in retaliation for the Plaintiff's exercise of his constitutional right under Section 14 of the Kentucky Constitution to petition the courts for redress, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

In suspending and discharging the Plaintiff from his employment, Bishop and Karsner, acting in their official capacities and individually, and JCCD, acted under color of state law and maliciously subjected the Plaintiff to the deprivation of his rights and privileges under the Constitution of the United States, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

Appellee subsequently tendered another Third Amended and Supplemental Petition, which added the following language to his Eighth cause of action:

The Plaintiff appealed his suspension and discharge to arbitration through appropriate procedures provided by a collective bargaining agreement.

The arbitrator found that the Plaintiff "has been the recipient of disparate treatment and the discipline does not meet the 'just cause' test." The arbitrator found that the Plaintiff should be restored to his employment by May 1, 1998.

The arbitrator found that the similar offenses as charged against the Plaintiff had resulted in the issuance of a "letter of documentation." A letter of documentation is not a disciplinary action as defined in the collective bargaining agreement.

The arbitrator ruled that the time between the date of the Plaintiff's discharge (October 15, 1997), and May 1, 1998, should be considered a suspension without pay or credit for leave time or seniority.

The arbitrator's ruling that the Plaintiff should be considered suspended between October 15, 1997, and May 1, 1998, without pay or credit for leave time or seniority is arbitrary, unsupported by the evidence, contradicted by the arbitrator's finding of disparate treatment, without just cause, and beyond the scope of the arbitrator's authority to interpret and apply the collective bargaining agreement.

The Plaintiff appealed the ruling of the arbitrator as provided by the collective bargaining agreement to the Defendant Armstrong.

On May 1, 1998, acting through his Chief Administrative Officer, the Defendant Armstrong denied the Plaintiff's appeal.

By denying the Plaintiff's appeal, Armstrong, acting in his official capacity and individually, ratified and adopted the wrongful and malicious acts of Bishop, Karsner, and JCCD in suspending the Plaintiff from his employment without due process and in retaliation for the Plaintiff's exercise of his constitutional right under Section 14 of the Kentucky Constitution to petition the courts for redress, causing the Plaintiff to suffer damages in excess of the jurisdictional requisite of this Court.

In his Second and Third Amended Petitions, Appellee sought: (1) injunctive relief precluding Appellants from further acts of retaliation and alternatively directing Appellants to reinstate him to his employment and to restore him to his previous rank of sergeant, together with all back pay and benefits; (2) compensatory damages; (3) punitive damages; (4) his costs expended; (5) reasonable attorneys' fees as allowed by law; (6) trial by jury of all issues so triable; and (7) other relief deemed adequate.

Appellee moved the court for partial summary judgment on the Second and Third causes of action, claiming that there were no genuine issues of material fact as to Appellants' liability, which had already been adjudicated in *Peerce I*. Appellants moved for summary judgment as to each of the causes of action asserted in the Second and Third Amended Petitions and argued that Appellee's Fourth, Fifth, and Sixth claims had already been decided in Appellants' favor and that the Second, Third, Seventh, and Eighth causes of action were barred by sovereign immunity. The trial court granted Appellants' motion for summary judgment, finding that: (1) sovereign immunity barred all of Appellee's claims against the Fiscal Court and

JCCD; (2) the remaining defendants were shielded from suit by official immunity; and (3) that no genuine issues of material fact remained with regard to the Fourth and Fifth causes of action because JCCD had acted properly in demoting Appellee.

Appellee appealed from the trial court's summary judgment order. In what we will refer to as *Peerce II*, the Court of Appeals vacated summary judgment on claims Two, Three, Seven, and Eight and affirmed summary judgment on claims Four, Five, and Six. With regard to claims Three, Seven, and Eight, the Court of Appeals held that state law sovereign immunity is not a defense to a federal civil rights claim brought pursuant to 42 U.S.C. § 1983 (" § 1983 claim"). And, as to claims Two, which alleged wrongful discharge in violation of KRS Chapter 67B, and Three, which alleged a § 1983 claim arising out of the same facts, the Court of Appeals stated:

> [T]he previous decision of this court, determining that the discharge was indeed wrongful, is now the law of this case.
>
> We agree that Peerce had a protected property right in his employment and that due process protections guaranteed by the merit system (KRS Chapter 67B) and by his collective bargaining agreement have activated the Fourteenth Amendment to the United States Constitution. Claim three, stating a claim under § 1983 for the wrongful discharge, is thus a viable claim. In disregarding the recommendation of the Merit Board, the Corrections Department, the Fiscal Court, and the County–Judge were all implicated in the wrongful termination of Peerce.
>
> Furthermore, the County–Judge clearly acted beyond the scope of his legitimate authority in electing to vote in the absence of a need to break a tie.

The circuit court, citing *Franklin County v. Malone*, Ky., 957 S.W.2d 195, 201 (1997), characterized Armstrong's action as "an honest mistake of judgment," finding that the law was "not unequivocally clear as to Armstrong's options when he made this decision." The court erred in so concluding as it improperly treated a question of material fact (*i.e.*, Armstrong's state of mind in light of the clear and unambiguous directive of the ordinance) as a conclusion of law.

Thus, in summary, as to claims two and three, we vacate the order of the trial court and remand for a determination of liability—if any—as to the Correction[s] Department, the Fiscal Court, and the County–Judge Executive pursuant to § 1983.

As to Appellee's Seventh and Eighth claims, which alleged § 1983 retaliation claims, the Court of Appeals held:

> The seventh claim asserts failure to promote by the Corrections Department and by Bishop—allegedly in retaliation for Peerce's exercise of his recourse to litigation in redress of his wrongful termination. The eighth claim essentially reiterates the seventh, adding claims for wrongful and retaliatory suspension and discharge without due process by the Corrections Department, Bishop, and Karsner—with ratification of the alleged wrongs by Armstrong.
>
> We hold that as there were genuine issues of material fact unresolved with respect to these claims, summary judgment was premature and was improvidently entered under the strict standard dictated by *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). We therefore vacate the order of the trial court and remand these two claims for additional proceedings.

Appellants filed a motion for discretionary review in this Court, which we grant-

ed. Appellants maintain that the trial court properly granted summary judgment for Appellants as to all of Appellee's causes of action. More specifically, Appellants argue that they are immune from suit because sovereign immunity and qualified immunity are complete defenses to liability under § 1983, and that in this case both defenses are applicable because (1) they, as Jefferson County agencies and officials, are arms of the state protected by sovereign immunity, and (2) Appellee cannot make a sufficient showing that Armstrong, Bishop, or Karsner's actions violated "*clearly established* statutory or constitutional rights of which a reasonable officer would have known." Appellants also contend that summary judgment was appropriate on the merits of the claims because: (1) *Peerce I* "should have preclusive effect on his subsequent federal challenge"; and (2) the allegations in claims Seven and Eight do not state actionable § 1983 claims.[2] Appellee argues that the Court of Appeals properly vacated the trial court's summary judgment because state law sovereign immunity is inapplicable to his § 1983 claims and qualified immunity does not protect the individually-named official Appellants because their actions clearly violated Appellee's well-established statutory and constitutional rights.

## II. ANALYSIS

We evaluate the propriety of the trial court's summary judgments under CR 56.03, which states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] In *Steelvest, Inc. v. Scansteel Service Center,*[4] this Court held that "summary judgment is to be cautiously applied and should not be used as a substitute for trial"[5] and, thus, summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.' "[6] In this case, we will first address Appellants' contention that this case has been rendered moot by a subsequent decision from this Court, and then analyze the state and federal claims—as well as the Appellants—separately.

## A. FRIEDMAN V. ARMSTRONG AND LAW OF THE CASE

■ At oral argument, Appellants' primary argument was that the issues in this case were rendered moot by this Court's decision in *Friedman v. Armstrong,*[7] which addressed the same issue decided six years earlier in *Peerce I*, but reached the opposite conclusion. The issue presented in *Friedman v. Armstrong* was "whether the final authority to remove Jefferson County Correctional Department employees rests

---

2. We have carefully examined Appellants' arguments with respect to the merits of Claims Three, Seven, and Eight, as well as the case law Appellants cite in support of those arguments, and we find nothing to support Appellants' allegations that summary judgment was proper as to the merits of the claims. Accordingly, we will not separately address these arguments except as they may be relevant to some Appellants' qualified immunity claims.

3. CR 56.03.

4. Ky., 807 S.W.2d 476 (1991).

5. *Id.* at 483.

6. *Id.*

7. Ky., 59 S.W.3d 875 (2001).

with the Jefferson County Merit Board, or with the Jefferson County Judge–Executive (subject to the approval of the Jefferson Fiscal Court)," [8] and this Court unanimously held that "the authority rests with the Jefferson County Judge–Executive[.]" [9] Although we find *Friedman v. Armstrong* relevant to some of the issues we must decide in this case—*e.g.*, whether Jefferson County Judge–Executive Armstrong has qualified official immunity under state or federal law [10]—we disagree with Appellants' contention that *Friedman v. Armstrong*'s holding somehow supercedes *Peerce I*. Although *Friedman v. Armstrong* finally resolved this issue regarding the relative authority of the Jefferson County Judge–Executive and Fiscal Court vis-à-vis the Jefferson County Merit Board, as between these parties to this case, those issues were resolved by the Court of Appeals in *Peerce I*, and that established the "law of the case" as to them. [11] Accordingly, we address the issues presented in this appeal in light of *Peerce I*'s holding.

## B. CLAIM TWO—WRONGFUL DISCHARGE UNDER STATE LAW

■ At oral argument, Appellee referenced this Court's recently-rendered opinion in *Yanero v. Davis,* [12] and conceded that the trial court properly granted summary judgment for the Fiscal Court and JCCD

as to the KRS Chapter 67B state law claim because of those entities' immunity under state law. The same conclusion, of course, applies to Appellee's claim against Armstrong in his official capacity. [13] Appellee argued, however, that because his second cause of action also asserted a claim against Armstrong in his individual capacity, summary judgment in his favor was improper because Armstrong may claim not sovereign or governmental immunity, but rather only qualified official immunity, [14] which Appellee argues was inapplicable in this case. We hold that the trial court properly granted summary judgment in Armstrong's favor as to Appellee's second cause of action.

*Yanero* holds that an official sued in his or her individual capacity "enjoy[s] only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." [15] Armstrong's decision to terminate Appellee was clearly a discretionary act, "*i.e.*, [one] involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" [16] And, although Appellee argues that *Peerce I*, which held that "Armstrong clearly overstepped his authority by unilaterally deciding not to follow the Board's decision," demonstrates that Armstrong acted in bad faith, we observed in *Yanero* that "in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or

8. *Id.* at 876.

9. *Id.*

10. *See supra* Parts II(B) and II(C).

11. *See Board of Trustees of University of Kentucky v. Hayse*, Ky., 782 S.W.2d 609, 611 (1990), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510, 523 (2001).

12. 65 S.W.3d 510 (2001).

13. *Commonwealth v. Harris*, Ky., 59 S.W.3d 896, 899 (2001); *Yanero*, 65 S.W.3d at 521–2.

14. *See Yanero*, 65 S.W.3d at 521–523.

15. *Id.* at 522.

16. *Id.*

other *clearly established right* which a person in the [officer's] position *presumptively would have known* was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness[.]" [17] The factual context of this case exemplifies the "legally uncertain environment" in which qualified official immunity is appropriate. After all, while the Court of Appeals reached one conclusion as to the relative authority of the County Judge–Executive and the Merit Board in *Peerce I*, in *Friedman v. Armstrong*, this Court examined the same enactments and reached the opposite conclusion. The trial court properly analyzed the relevant inquiry when it observed that "the law was not unequivocally clear as to Armstrong's options when he made this decision" and held that Armstrong's discretionary decision was therefore shielded by qualified official immunity. Because we find no basis to conclude that Armstrong "presumptively would have known" that he would exceed his authority if he made an employment decision that contradicted the Merit Board's order, we hold that the trial court properly granted summary judgment for Appellants as to Appellee's second cause of action. We therefore reverse the Court of Appeals as to that claim and reinstate the trial court's summary judgment.

## C. CLAIMS THREE, SEVEN & EIGHT—IMMUNITY UNDER § 1983

Claim Three in Appellee's Second Amended Petition and Claims Seven and Eight in Appellee's Third Amended Petition each assert federal civil rights claims under 42 U.S.C. § 1983,[18] which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .... [19]

§ 1983 claims may be brought in either federal or state court.[20]

The trial court entered judgment in favor of claims Three, Seven, and Eight on the grounds that each of the defendants enjoyed either sovereign or qualified immunity. Appellants urge that this was an appropriate disposition of these claims. Accordingly, we shall address each immunity claim in turn.

---

17. *Id.* at 523 (emphasis added).

18. Although counsel for Appellants asserted both in his brief to this Court and again at oral argument that Appellants were unaware that claims Three, Seven, and Eight were § 1983 claims until the Court of Appeals identified them as such, we observe that: (1) the claims contained the necessary allegations to state a claim under § 1983, *see* 15 AM. JUR.2D *Civil Rights* § 148 (2000) ("By the plain terms of 42 U.S.C.A. § 1983, two and only two allegations are required in order to state a cause of action under § 1983: the complaint must allege that (1) some person has deprived the plaintiff of a federal right; and (2) the person who has deprived the plaintiff of that right acted under color of state or territorial law[.]") and (2) Appellee's Motion for Partial Summary Judgment should have removed any doubt as to the nature of the claims when it expressly identified claim three as "stat[ing] a claim for deprivation of civil rights in violation of 42 U.S.C. § 1983."

19. 42 U.S.C. § 1983.

20. *Martinez v. California,* 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Sowders v. Atkins,* Ky., 646 S.W.2d 344, 347 (1983), *Scott v. Campbell Co. Board of Education,* Ky.App., 618 S.W.2d 589, 590 (1981).

### 1. SOVEREIGN IMMUNITY

 Under § 1983, any "person" who violates the federally protected rights of another may be enjoined and/or held liable for damages.[21] It is well-established, however, that § 1983 does not override the traditional sovereign immunity of a state and arms of the state as guaranteed by the Eleventh Amendment.[22] Thus, a governmental entity that enjoys Eleventh Amendment immunity is not a "person" subject to suit under § 1983.[23]

 Appellants argue that the trial court correctly held that the Fiscal Court and JCCD were protected from Appellee's § 1983 claims by their immunity under state law. In their view, *Clevinger v. Board of Education of Pike County*[24] accurately states the law on this issue in Kentucky. In *Clevinger*, the Teamsters filed a class action against the Pike County Board of Education, claiming that the Board's failure to make requested payroll deductions of union dues violated both state law and § 1983. The trial court dismissed the § 1983 claim. The Court of Appeals reversed. This Court granted discretionary review, reversed the Court of Appeals and reinstated the trial court's ruling because we held the school board was a state agency shielded by state sover-

eign immunity and that the state sovereign immunity doctrine protected against § 1983 claims. In reaching that conclusion, we considered the status of county agencies under Kentucky law. "At least since 1941 this Court has recognized that a County Board of Education is an arm of state government, and as such enjoys state sovereign immunity against liability and tort."[25] We relied on *Will v. Michigan Dept. of State Police*[26] and *Board of Trustees v. Hayse*[27] as our basis for concluding that sovereign immunity immunized the board of education from suit under § 1983:

> Thus, because in this Commonwealth a School Board is protected by state sovereign immunity from a suit for money damages for an injury wrongfully inflicted, whether the cause of action is common law or statutory, and because the United States Supreme Court has decided that where such is the case the state sovereign immunity defense will prevail against a 42 USC § 1983 claim, we reverse the decision of the Court of Appeals and affirm the decision of the trial court dismissing the claim for money damages in this case.[28]

In *Howlett v. Rose*,[29] however, the United States Supreme Court held that state

---

**21.** 15 AM.JUR.2D *Civil Rights* § 88 (2000).

**22.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

**23.** *See Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**24.** Ky., 789 S.W.2d 5 (1990).

**25.** *Id.* at 10. *But see Yanero v. Davis*, 65 S.W.3d at 527 ("A local board of education is not a 'government,' but an agency of state government. As such, it is entitled to governmental immunity, but not sovereign immunity.").

**26.** 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

**27.** 782 S.W.2d 609 (1989).

**28.** *Clevinger*, 789 S.W.2d at 12.

**29.** 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

sovereign immunity did not bar a § 1983 claim against a county school board. Howlett was a former high school student whose car was searched while parked on campus and who was suspended from school for five days. He brought § 1983 claims against the county school board and some of its officials in which he alleged that the search and subsequent suspension were illegal and in violation of his Fourth and Fourteenth Amendment rights. The trial court dismissed the action, claiming that it was barred because Florida had not waived its sovereign immunity with regard to § 1983 claims. The Florida Court of Appeals affirmed the dismissal, and the Florida Supreme Court denied review. The United States Supreme Court granted certiorari and defined its task as deciding "whether a state-law defense of 'sovereign immunity' is available to a school board otherwise subject to suit in a Florida court even though such a defense would not be available if the action had been brought in a federal forum." [30] In completing this task, the Court recognized *Will* as establishing that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity are not subject to suit under § 1983 in either federal court or state court." [31] The Court observed that, by granting immunity to the school board, the Florida courts had "extended absolute immunity from suit not only to the State and its arms but also to municipalities, counties, and school districts that might otherwise be subject to suit under § 1983 in federal court." [32] The

Court held that this action violated the Supremacy Clause of the United States Constitution because "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." [33] Further, the Court noted that "[f]ederal law makes governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations." [34] Finally, the Court held, "[t]o the extent that the Florida law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." [35]

Appellants urge us to conclude that *Howlett* is not applicable to this case because *Howlett* involved a Florida school board that was not protected by sovereign immunity under Florida law whereas Kentucky counties enjoy immunity under Kentucky law.[36] We are not convinced by this argument. *Howlett* states clearly that state treatment of sovereign immunity is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue.

■ Accordingly, it is clear that " '[c]onduct by persons acting under color of state law which is wrongful under 42 USC § 1983 … cannot be immunized by state law.' " [37] And the relevant inquiry in this case, therefore is whether the Fiscal

---

30. *Id.* at 359, 110 S.Ct. 2430.

31. *Id.* at 365, 110 S.Ct. 2430.

32. *Id.* at 365–6, 110 S.Ct. 2430.

33. *Id.* at 375, 110 S.Ct. 2430.

34. *Id.* at 377, 110 S.Ct. 2430.

35. *Id.* at 377–78, 110 S.Ct. 2430.

36. *See Schwindel v. Meade Co.,* Ky., 113 S.W.3d 159, 163 (2003); *Clevinger,* 789 S.W.2d at 10; *Eady v. Jefferson County,* Ky., 551 S.W.2d 571, 572 (1977).

37. *Martinez v. California,* 444 U.S. at 284 n. 8, 100 S.Ct. 553.

Court [38] is an arm of the state, in which case it would be protected by Eleventh amendment immunity and would not constitute a "person" subject to suit under § 1983. The United States Supreme Court, "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.' " [39] Thus, under federal law, counties are not arms of the state. Accordingly, none of the Appellants are protected from liability under § 1983 by the Eleventh Amendment.

## 2. QUALIFIED IMMUNITY

 Although none of the Appellants could assert sovereign immunity as a bar to Appellee's § 1983 claims, the Appellants sued in their individual capacities—Armstrong, Bishop, and Karsner—could (and did) assert the defense of qualified immunity. United States Supreme Court precedent in § 1983 cases provides a complete defense for a government official performing discretionary functions so long as his or her actions were reasonably consistent with the rights allegedly violated. Conversely, if the official's actions violated a clearly established right or law, the immunity is lost and the official is liable for the violation. The test is one of "objective legal reasonableness":

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent. [40]

When a claim of qualified immunity is asserted on the grounds that the alleged constitutional right violated was not firmly established, the applicability of the qualified defense is a question of law to be decided prior to discovery. [41]

 As the qualified immunity inquiry is essentially identical to the qualified official immunity inquiry under state law, and we held in Part III(C) that Armstrong's actions took place in a legally uncertain environment, we hold that the trial court properly granted summary judgment as to Appellee's third cause of action against Armstrong in his individual capacity. Appellants also argue that Armstrong, Bishop, and Karsner enjoy qualified immunity as to the claims made against them individually in Appellee's Seventh and Eighth causes of action. However, we would characterize both parties' arguments regarding qualified immunity as to claims Seven and Eight as convoluted, and it appears that much of the

---

**38.** We frame the issue exclusively in terms of the Fiscal Court's immunity because none of the other Appellants—JCCD, Armstrong, Bishop, or Karsner—has any plausible claim to 11th Amendment immunity.

**39.** *Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401, 410 (1979); *Hess v. Port Authority Trans–Hudson,* 513 U.S. 30, 43, 115 S.Ct. 394, 402, 130 L.Ed.2d 245, 257 (1994); *Mt. Healthy City Board of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471, 479 (1977).

**40.** *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

**41.** *See Crawford–El v. Britton,* 523 U.S. 574, 590, 118 S.Ct. 1584, 1592–93, 140 L.Ed.2d 759, 774 (1998) ("The objective standard ... raises questions concerning the state of the law at the time of the challenged conduct— questions that normally can be resolved on summary judgment."); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738– 39, 73 L.Ed.2d 396, 410–411 (1982).

confusion results from the fact that claims Seven and Eight do not clearly identify how Appellants' actions violated a specific right under the federal constitution. The United States Supreme Court has observed that, under such circumstances, "the court may insist that the plaintiff 'put forward specific nonconclusory factual allegations' ... in order to survive a prediscovery motion for dismissal or summary judgment."[42] Because we find it impossible to determine from the pleadings whether Appellants Armstrong, Bishop, and Karsner are entitled to qualified immunity, we remand claims Seven and Eight for the trial court to make that determination after requiring Appellee to plead his constitutional claims with particularity.

## III. CONCLUSION

For the above reasons, we affirm the Court of Appeals's holding as to the claims against the Fiscal Court in Appellee's Third cause of action and against JCCD in Appellee's Third, Seventh, and Eighth causes of action. We reverse the Court of Appeals's holding, and reinstate the trial court's summary judgment, as to the entirety of Appellee's Second cause of action and as to the claim made against Armstrong in his individual capacity in Appellee's Third cause of action. Finally, we remand claims Seven and Eight to the trial court for further proceedings consistent with this opinion in connection with Appellants Armstrong, Bishop, and Karsner's assertions of qualified immunity.

COOPER, GRAVES and STUMBO, JJ., concur.

LAMBERT, C.J., concurs in part, but dissents in part by separate opinion as to the portion of the majority's holding that affirms the Court of Appeals's reversal of the trial court's summary judgment regarding Appellee's § 1983 claim against the Fiscal Court, in which WINTERSHEIMER, J., joins.

WINTERSHEIMER, J., also dissents in part by separate opinion on grounds of qualified immunity as to the majority's remand of Appellee's Seventh cause of action against Bishop and Eighth cause of action against Bishop, Karsner, and Armstrong.

JOHNSTONE, J., not sitting.

LAMBERT, Chief Justice, Concurring in Part and Dissenting in Part.

I must dissent from the majority opinion with respect to its reliance on *Howlett v. Rose*[1] as the basis for its decision that governmental entities of Jefferson County are subject to suit in Kentucky state courts for claims filed under 42 U.S.C. § 1983. I believe that the majority has incorrectly analyzed *Howlett* and overlooked long-standing Kentucky law that recognizes counties and county governments as arms of the state that are entitled to the same sovereign immunity of the state.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the disposition and analysis provided by the majority opinion in regard to qualified immunity. Here, qualified immunity is available because the constitutional rights of the plaintiff were not established by the enact-

---

42. *Crawford–El v. Britton*, 523 U.S. at 578, 118 S.Ct. at 1587, 140 L.Ed.2d at 779 (*quoting Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)).

1. 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

ment of a local county government ordinance. In this matter, we must apply federal constitutional law and analysis to a 42 U.S.C. § 1983 case in this jurisdiction or in state courts. There has been created no federal constitutional right in a local government ordinance which addresses local merit board procedures. There is nothing in the ordinance cited which would meet the test of objective legal reasonableness to put the official on notice that a disagreement with the merit board at the time would amount to unconstitutional conduct. The ordinance does not clearly establish rights which are consistent with the Section 1983 analysis found in *Mumford v. Zieba*, 4 F.3d 429 (6th Cir.1993).

Accordingly, in the absence of a clearly recognized constitutional right which was established in the manner directed by applicable federal precedent, Jefferson County Judge Armstrong is entitled to qualified immunity. It would appear that at the time he was acting in the best interests of the county and the corrections department in regard to a very difficult employment matter. Armstrong, Bishop and Karsner are entitled to the defense of qualified immunity.