RENDERED:  OCTOBER 3, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1100-MR

ESTATE OF JEREMIAH BLEVINS,
BY AND THROUGH JENNIFER
BLEVINS, AS ADMINISTRATRIX,
AND JENNIFER BLEVINS,
INDIVIDUALLY                                                    APPELLANTS


APPEAL FROM LEWIS CIRCUIT COURT
v.        HONORABLE BRIAN CHRISTOPHER MCCLOUD, JUDGE
ACTION NO. 21-CI-00083


BRANDON HOWE; STEVE
GUNNELL; AND TERRY ISHMAEL                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  Appellants, the Estate of Jeremiah Blevins, by and through

Jennifer Blevins, as Administratrix ("Estate"), and Jennifer Blevins ("Jennifer"),

individually, challenge the Lewis Circuit Court's Order granting summary

judgment to the Appellees based on qualified official immunity. Having reviewed the record and the applicable law, we affirm the Lewis Circuit Court.

**FACTUAL AND PROCEDURAL HISTORY**

On the morning of May 20, 2020, Jeremiah Blevins ("Blevins") was driving a dump truck, traveling east on KY-8 in Lewis County, Kentucky, near Vanceburg. He had just filled the truck with a load of sand from River Sand and Gravel. As he was driving in the eastbound lane around a curve on KY-8, he encountered another dump truck being driven by Amos Vaughn ("Vaughn"). Blevins alleged that Vaughn's truck was in his lane of travel, rather than in the westbound lane of KY-8, the direction Vaughn was driving.

Blevins said he made the quick decision to pull his truck over as far as he could, entering the ditch line, rather than hit Vaughn's truck head-on. This led to Blevins's truck leaving the road and flipping on its side. Blevins suffered severe injuries, including a spinal cord injury that left him partially paralyzed.

KY-8 is a two-lane asphalt roadway in a rural area of Lewis County. On the date of the accident, there was a preexisting slide[1] on that portion of the westbound lane of KY-8 where Blevins said the trucks met. This section of KY-8

---

[1] Also called a landslide: "A slide is basically a geotechnical failure. The rock or earth beneath the roadway fails." Brandon Howe Deposition, Page 64, lines 1-2. "Basically, the geotechnical issue [is] with the embankment or the soil beneath the roadway, when it becomes unsuitable to hold up the road anymore." Brandon Howe Deposition, Page 50, lines 13-17.

was known as a slide-prone area, and several slide repairs had been done in the vicinity before. This part of KY-8 also was frequently traveled by heavy trucks and buses, which could worsen any damage to the road. On the curve where the accident occurred, the eastbound lane of KY-8 bordered an uphill, wooded area, while the westbound lane had an embankment below it. There was a crack in the westbound lane, and the northern edge of that lane had begun to slowly slip downward.

Blevins filed suit on May 19, 2021, alleging negligence against Vaughn, Vaughn's employer ("Red River Ranch"), and the Appellees. The Complaint sought compensatory and punitive damages, and Jennifer claimed loss of consortium. Concurrently, Blevins filed a claim with the Kentucky Board of Claims, pursuant to KRS[2] Chapter 49.

The Appellees are all employees of the Kentucky Transportation Cabinet, Department of Highways. Although the Appellees are employed with the Department of Highways, we will refer to the employer as the "Transportation Cabinet" for ease in discussing applicable case authorities. Steve Gunnell ("Gunnell") is the chief district engineer, and he is responsible for all activities occurring in District 9, which includes Lewis County. Brandon Howe ("Howe") is a section engineer in District 9, and he supervises maintenance activities in Lewis

---

[2] Kentucky Revised Statutes.

County and Clark County. Terry Ishmael ("Ishmael") is Howe's supervisor, and he is the transportation engineer branch manager for project development in four counties, including Lewis County. Two other Transportation Cabinet employees were initially named but were dismissed by agreement prior to the summary judgment ruling at issue.

Regarding the Appellees, Blevins alleged that, as employees of the Transportation Cabinet, they had a mandatory duty to inspect, maintain, and repair roadways within District 9, including KY-8, and that they breached those duties. Blevins further claimed they knew or should have known about the unreasonably dangerous condition on KY-8, and that they failed to identify and eliminate the hazards. Blevins argued Appellees' negligence was a substantial factor in causing his injuries.

Appellees filed their Answer to Blevins's Complaint, and they claimed immunity, as well as other defenses. Both Vaughn and Red River Ranch also answered the Complaint, and Vaughn denied the allegation that he was ever within Blevins's lane of travel. Discovery, including depositions and interrogatories, ensued. An accident reconstruction expert supported Blevins's version of the events.

In January 2023, Appellees filed a motion for summary judgment, arguing they were entitled to immunity. When sued in their official capacities,

-4-

immunity is absolute, and those claims must be dismissed. That conclusion is not questioned here. As for their individual capacities, the Appellees argued they were entitled to qualified official immunity because they were exercising discretionary functions and acting in good faith.

The Appellees argued there was simply not enough funding available to them to fix, repair, or correct all the slides in roadways within District 9, and they had to decide which roadways should be prioritized. Significantly, the Appellees do not have any control over the funding provided. They presented evidence that they made a request for funds to fix the slide on KY-8, but the funding was not promptly granted. The funding for the work became available later in the fall of 2020. Appellees further argued that Blevins was not able to establish negligence by the Appellees.

The circuit court heard oral arguments on the summary judgment motion in May 2023.[3] Blevins passed away in January 2024, prior to a decision being issued on the motion. Jennifer was appointed as Administratrix for the Estate. She filed a motion to revive the action and substitute the Estate, as well as

---

[3] While this hearing was requested as part of the record, it appears the hearing was either not recorded or not saved after recording. The hearing was held in Greenup County, rather than Lewis County. Special care must be taken to ensure that proceedings are properly recorded and made part of the record with the circuit clerk where the action is pending, especially when the court conducts hearings in a different county from where the case is pending. Fortunately, in this matter, it appears this oversight is harmless, as all citations in the parties' briefs are to the written record, which we have in its entirety, and our review is *de novo*.

a motion to amend the Complaint to add a claim for wrongful death, which was granted by agreed order in July 2024.

On August 20, 2024, the circuit court granted summary judgment to the Appellees, finding that Appellees' duties were discretionary, and thus they were entitled to qualified immunity in their individual capacities and absolute immunity in their official capacities. The circuit court further found Appellees owed no duty to Blevins, and that their actions did not cause his injuries.[4] This appeal follows.[5] Other evidence will be discussed as it becomes relevant to the analysis.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstances." *Pearson ex rel. Trent v. National Feeding*

---

[4] We will focus our review on the immunity question rather than the causation component of negligence, but we note that the claim is not that the slide itself caused the accident by giving way as the trucks passed each other. The condition of the slide was not shown to be any different immediately before and after this accident. It was the drivers' decisions on how to approach the slide area, with both drivers knowing of the slide, that led to the accident.

[5] While not necessarily relevant to our analysis, the circuit court action remains pending against Vaughn and Red River Ranch and has been stayed pending the resolution of this appeal. The Board of Claims case was also still pending when the parties' briefs were submitted.

*Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists." *Phelps v. Bluegrass Hospitality Management, LLC*, 630 S.W.3d 623, 627 (Ky. 2021) (citations omitted). Whether a defendant is entitled to the defense of official immunity is a question of law. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (citing *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 825 (Ky. 2004)). Questions of law are reviewed *de novo*. *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

## ANALYSIS

When sued in their individual capacities, public officials and employees may be shielded from tort liability through qualified official immunity, "which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Whether qualified immunity extends to the Appellees turns on whether their acts were discretionary or ministerial. *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014).

The sole question on appeal that this Court must decide is whether the Appellees' individual duties involving the maintenance and repair of the roadways were discretionary or ministerial. The Estate and Jennifer insist the duty to repair

slides in roadways is ministerial, while Appellees argue that identifying, prioritizing, and responding to slides in roadways is a matter of judgment, partly because there is insufficient funding to make all repairs needed at any given time. The circuit court concluded that Appellees had to use their discretion in prioritizing the funds available for various repairs in roadways, thereby making their duties discretionary in nature.

"[P]ublic officers and employees are entitled to 'qualified official immunity' for negligent conduct when the negligent act or omissions were (1) discretionary acts or functions, that (2) were made in good faith (*i.e.*, were not made in 'bad faith'), and (3) were within the scope of the employee's authority." *Sloas*, *supra*, at 475 (citing *Yanero*, *supra*, at 522). In this instance, it is undisputed that Appellees were acting within the scope of their professional authority, and there is no allegation or evidence they acted in bad faith. Therefore, their immunity turns on the sole factor of whether their duties were discretionary or ministerial.

"In Kentucky, personal liability for a public officer's or public employee's negligent performance of duties depends in part on whether the powers or duties in question were ministerial or discretionary in nature." *Ashby v. City of Louisville*, 841 S.W.2d 184, 188 (Ky. App. 1992). "Discretionary acts or functions are 'those involving the exercise of discretion and judgment, or personal

deliberation, decision, and judgment . . . .'" *Sloas*, *supra*, at 477 (quoting *Yanero*, *supra*, at 522).

> Discretionary . . . duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued.  Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959) (quoting from 43 AM. JUR., *Public Officers*, Section 258).

By contrast, a ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, *supra*, at 522.  Few actions are purely discretionary or ministerial in nature, and therefore we must look at "the dominant nature of the act." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

The Estate argues that Appellees were required to follow the Commonwealth of Kentucky Transportation Cabinet's "Maintenance Guidance Manual."  This manual states:  "Roadway surfaces should be maintained true to type, cross-section, alignment, and grade as constructed or reconstructed *where practical and feasible*.  They shall be maintained so as to keep traffic moving with

convenience and safety."[6]  "The *Department* shall repair slips and slides."[7]  All

Appellees generally agreed in their depositions that they were required to follow

the Transportation Cabinet's manual.

But the Appellees also point out that, while generally there is a duty to

repair slides in the roadway, there is limited funding available for repair and

maintenance.  The engineers and supervisors must look at all the repairs necessary

for the roadways in their district, and prioritize which projects need the most

immediate attention, while keeping budgetary constraints in mind.  Howe testified

in his deposition that the priority for maintenance is critical maintenance,

preventive maintenance, and desirable but not mandatory maintenance.  A slide

would generally be considered critical maintenance.  Howe explained that when a

slide in a roadway has been identified, they monitor it and patch when necessary.

If the slide continues to worsen, they will then determine what is needed to do a

repair, obtain a cost estimate, and request funding.

In order to repair this particular slide, a process using "soil nails" was

required, which is a much more intensive and expensive process than the usual

---

[6] Section MAIN-401 of Maintenance Guidance Manual.  Exhibit 15 to Plaintiff's Response in Opposition to Motion for Summary Judgment, Record at 193B.  (Emphasis added – the language emphasized indicates required discretion to assess practicality and feasibility.)

[7] Section MAIN-602 of Maintenance Guidance Manual.  Exhibit 17.  (Emphasis added – here we see that it is the agency's mandatory duty to repair slides, not necessarily the individual obligation of employees to do so, especially when they may not be given the funding or other resources to do so.)

practice of using railroad ties. Ishmael stated that this process is required when there is no rock close enough to the surface to use railroad ties. He explained:

> The nails, instead of going vertical to find rock, they go at [an] angle, horizontal. So, they're actually in this case drilling outside the shoulder back into the hillside. And they've got special cables and rods, and then they – they pump grout around them that adheres to the rock, to the soil. And then they basically build a wall on the outside shoulder.[8]

An outside contractor was required to perform this work, and the estimate given was approximately $300,000. Ishmael stated that if there had been bedrock closer to the surface, this slide could have been repaired for about $50,000-$75,000.

In June 2019, Howe sent an email to Ishmael with requests for funds for five slides within Lewis County, listed by highest priority. This particular slide on KY-8 was at the bottom of the list. Howe testified he considered this slide to be lower priority because the roadway was still passable using both lanes of traffic. At the time of the request, the slide was relatively minor. A higher priority slide on KY-59 on the list had an entire lane break off from the road and fall over a cliff. This required a 40-mile detour. A subsequent email sent in August 2019 indicated that there were funds to cover that repair and some other slides on KY-59 but "Kentucky 8 would have to wait until a later date."

---

[8] Terry Ishmael Deposition, Page 87.

The Estate argues that the unpublished case of *Commonwealth, Transportation Cabinet, Department of Highways v. Nash*, No. 2005-CA-000558-MR, 2006 WL 2382730 (Ky. App. Aug. 18, 2006), should be applied to the facts of this case. In *Nash*, this Court affirmed a final order of the Board of Claims which awarded damages to Nash for damage to his barn caused by the breaking away of part of a highway. Some of the facts are similar to the facts of the present case, in that this highway too was in a slide-prone area, and the Transportation Cabinet had made multiple attempts to fix this portion of the highway. The Cabinet argued:

> that funding is limited for the repair of slides on Kentucky's rural secondary roads and that the emphasis is on doing projects of highest priority considering safety and cause. It notes that its priority list for slide repair includes approximately 3,200 sites. The Cabinet also refers to testimony from an engineer that there were several methods to choose from to remedy a slide. The implication made is that because the Cabinet has limited financial resources to repair slides on rural secondary roads and because there are several methods to choose from to remedy a slide, decisions concerning which repairs and how they are to be accomplished involves discretionary decisions by Cabinet officials.

*Id.* at \*2.

This Court held, however, that the Transportation Cabinet's duty to maintain the roadways is a ministerial act, relying on *City of Frankfort v. Byrns*, 817 S.W.2d 462 (Ky. App. 1991).

-12-

The problem with reliance on *Nash* is two-fold. First, *Nash* is an unpublished opinion and is therefore not binding precedent. RAP[9] 41(A); *Kendall v. Godbey*, 537 S.W.3d 326, 335 (Ky. App. 2017). Additionally, *Nash* dealt with a Board of Claims case, in which a property owner was making a claim against the Transportation Cabinet. The General Assembly has waived the Commonwealth's sovereign immunity for the Transportation Cabinet's negligence to the extent the claim may be made in the Board of Claims as provided by statute. KRS 49.060. This Court in *Nash* merely held that the Transportation Cabinet, and thus, the Commonwealth itself, had a ministerial duty to maintain the roadways. We rejected the argument that limited funding makes the *Transportation Cabinet's* duty to maintain the roads discretionary.

While some facts in *Nash* are similar, the parties involved and alleged to be responsible are not. It is in fact the Commonwealth, through the Transportation Cabinet, that sets the budget for roadway repair. The Estate in this case is asking this Court to hold three individual engineers responsible for not repairing a roadway, when those individuals had no authority regarding the budgeting and financing of roadway projects. They are required to use their discretion to prioritize what roads are repaired and in what order, depending on how much money they are allotted, and which roads urgently need to be repaired.

---

[9] Kentucky Rules of Appellate Procedure.

The fact that the duty of the Transportation Cabinet as an agency is considered ministerial and subject to action in the Board of Claims does not mean that individual employees have the same duty not subject to discretion so as to permit liability in tort for these individuals outside of the Board of Claims process.

This conclusion is supported by reviewing the cases cited by the Estate to support its argument that Appellees owed Blevins a duty of care in maintaining the roadway. The Estate cites several cases which hold that generally, the Transportation Cabinet's "duty with respect to the maintenance of roads is to maintain them in a reasonably safe condition for those members of the traveling public exercising due care for their own safety." *Commonwealth, Transp. Cabinet, Dep't of Highways v. Shadrick*, 956 S.W.2d 898, 900 (Ky. 1997). Again, we do not disagree with this contention, as the Transportation Cabinet, as an entity, has that duty. But these individual engineers can only do what they are allowed to do and for which they have the funds to allocate by virtue of the budget they are given.

In December 2019, an email was circulated that indicated $50,000 had been approved in funding to repair the slide on KY-8. Emails also intimate that the Transportation Cabinet wanted to start working on this slide on KY-8 and one other slide on another road the following spring. Howe explained that winter conditions can worsen any damage to roads, and it is more practical to do repairs

-14-

once the weather is warmer. There was testimony that, up to this point, the slide on KY-8 was moving very slowly, and patching was an adequate remedy until a more permanent repair could be funded. Howe and Ishmael testified that this portion of KY-8 was patched and paved on a few occasions between when the slide was initially noticed and when the accident occurred in May 2020.

At some point in early 2020, the slide on KY-8 began to worsen. There were testimony and emails indicating that the Appellees requested to use funds allocated for other repairs for this slide on KY-8. Ishmael testified that they are not allowed to use funds apportioned for one project on a different project unless and until it is approved. To fix this slide, an outside contractor was required to repair the slide. Ishmael said he must have the funds approved prior to work beginning; otherwise, it would leave the Transportation Cabinet vulnerable to a collection action by the contractor if they could not pay within 30 days.

Appellees' argument can be summed up by a brief portion of Ishmael's deposition testimony:

> Q: Are you required to undertake a project that you don't have funding for?
>
> A: We are not allowed to do that.[10]

---

[10] Terry Ishmael Deposition, Page 118.

There is precedent indicating that financial constraints can be taken into consideration when making the ministerial versus discretionary determination. The Kentucky Supreme Court said:

> a highway authority is not automatically liable every time a motorist drives his vehicle off the traveled portion of the highway and strikes a roadside hazard. Nor does the failure to follow design guidelines, such as those recommended by AASHTO or the *Warrants & Guidelines*, constitute the equivalent of negligence *per se* (as implied by the Board in the *Babbitt* case). Whether the failure to provide warnings or to erect a guardrail at a particular location constitutes negligence on the part of the highway authority is a fact-intensive inquiry for which the various design guidelines, **as well as available funds and cost effectiveness**, may be considered.

*Commonwealth, Transp. Cabinet, Dep't of Highways v. Babbitt*, 172 S.W.3d 786, 795 (Ky. 2005) (emphasis added). Further, in *Estate of Clark ex rel. Mitchell v. Daviess County*, 105 S.W.3d 841 (Ky. App. 2003), one of the factors used to determine that replacing a missing sign was ministerial rather than discretionary was that "[a]ccording to the county road engineer, money for sign expense was readily available in the Road Departments budget, and employees did not need fiscal court approval to maintain signs for the safe condition of the roadway." *Id.* at 846.

"And of course, the entirety of this system of assessment and repair is confined by the discretionary fiscal realities facing all of our municipalities – from our towering towns to our most humble hamlets." *Burns v. Aistrop*, 694 S.W.3d

-16-

390, 394 (Ky. App. 2024). In *Burns*, this Court recognized the "discretionary nature of the executive role" of an individual employee but did not foreclose liability against the agency itself as allowed by law, such as a Board of Claims case. *Id*. at 393-94.

The Estate further faults the Appellees for failing to put up any type of warning signs or traffic control devices around this slide prior to Blevins's accident. Immediately thereafter, a traffic signal was installed, and that portion of KY-8 became one lane. There are multiple cases holding that the decision of where to install traffic control devices is discretionary. *See Estate of Clark ex rel. Mitchell*, *supra*, at 845-46 (the decision not to install a guardrail at a particular location is discretionary); *Portwood v. Hoskins-Squier*, 689 S.W.3d 728, 734 (Ky. App. 2024) (determining whether and when to install crosswalks is discretionary). The Appellees further testified there was no good alternate route if they had decided to close the road due to the slide, and any alternative would actually have been more dangerous. This is clearly a discretionary decision, as it required a judgment call as to what would offer the most safety to the traveling public.

There is some dispute as to whether a warning sign was in place at the time of the accident. The Appellees stated in their deposition that they believe a "Break in Pavement" sign had been placed, but others testified they did not see a sign prior to the accident occurring. Regardless of whether the sign was placed

-17-

before or after the accident, it is undisputed that Blevins was aware of the slide on the road, as he traveled that exact route multiple times each workday. Vaughn was also previously aware of the slide. A warning sign would have made no difference under the facts presented where actual notice for both drivers is admitted.

Ultimately, it is significant that most of the cases cited by the parties, specifically those that deal with roadways, are appeals from Board of Claims cases. This indicates that the Board of Claims is the proper forum for these types of cases. The Estate in this case filed a Board of Claims case as well as the circuit civil action, and as far as we are aware, the Board of Claims case is still pending. While we offer no opinion as to the appropriate outcome for that case, it was appropriate for the Estate to file in the Board of Claims, as that is the mechanism the legislature has established for plaintiffs to obtain relief under these circumstances. A failure of the agency to perform its ministerial duty does not necessarily support an action against individual employees who must exercise discretion when carrying out the agency's budgetary decisions.

## CONCLUSION

Because we determine the Appellees' individual duties were discretionary rather than ministerial, they are entitled to qualified official immunity in their individual capacities as engineers for the Transportation Cabinet. We AFFIRM the Order of the Lewis Circuit Court.

-18-

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jennifer A. Moore
Emily A. DeVuono
Louisville, Kentucky

BRIEF FOR APPELLEES:

John F. Estill
Patrick F. Estill
Maysville, Kentucky